GEORGE E. SOMERS vs. THE CITY OF BRIDGEPORT.

New Haven & Fairfield Cos., Jan. T., 1891. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

By a city charter the board of police commissioners, by whom the policemen were to be appointed, consisted of the mayor and two members from each of the two great political parties, the mayor to preside and have a vote only in case of a tie, and any action requiring a concurrence of three members. There being policemen to be appointed, a resolution was offered at a regular meeting of the board when all were present, appointing certain persons named. Thereupon two members announced that they should not vote, but remained in the room. The mayor put the resolution to vote, and two members voted for it, and the other two refrained from voting, and the mayor thereupon declared the resolution passed. The two non-voting members protested against this ruling. Held that the silence of the non-voting members when the vote was put was a concurrence in the passage of the resolution and that it was legally passed.

Their previous declaration that they should not vote, and their subsequent protest, were of no avail.

A city ordinance provided that a schedule of the amounts due the members

of the police force, signed and approved by the police commissioners, should be handed to and examined by the city auditor before being presented to the common council. Meetings of the police commissioners had been called to act on the matter, but two members absented themselves and a quorum could not be obtained. Without waiting further for its action the common council passed a resolution paying the policemen. Held that it was competent for the council to waive the provisions of the ordinance, which was for the protection of the city, if in its judgment justice required it, and that its resolution to pay the policemen was legal.

[Argued January 22d—decided June 1st, 1891.]

SUIT for an injunction to restrain the defendant city from paying salaries to certain policemen; brought to the Superior Court in Fairfield County and heard before *Robinson, J.* Facts found and judgment rendered for the defendant, and appeal by the plaintiff. The case is fully stated in the opinion.

*A. B. Beers* and *J. C. Chamberlain,* for the appellant.

1. By the terms of the present revision of the charter of Bridgeport it is the duty of the mayor to nominate and of the council to confirm four police commissioners, two from each political party, who shall have the sole power of appointment and removal of the members of the police force. The charter further provides that the mayor shall be *ex officio* chairman of the board, and shall preside at its meetings, but shall have no vote except in cases of a tie ; that three members, exclusive of the mayor, shall constitute a quorum, and " that the concurrence of three of them shall be necessary for the transaction of business." This latter provision must mean something more than that three must take part in the transaction of business, for the provision that three shall constitute a quorum means that. It must mean, in fact, that three members shall *agree* that a certain thing shall be done or not done, while the other one may be absent, or present and disagree. In the case of a tie vote, this concurrence of three is effected by the vote of the mayor. Under the former charter the police commissioners had not the power of appointment, but merely nominated to the common

council. The present plan was adopted for the purpose of making the police force of the city non-partisan and divorcing it utterly from politics. *Samis* v. *King*, 40 Conn., 298. The evil was great. A remedy was sought and supposed to be found in the granting of new powers to this board, making them the sole appointing power, and so regulating their course of procedure that they would be in fact as well as theory non-partisan, and this could be done only by making " a concurrence of three " necessary for the transaction of business. This meant an active concurrence and not a passive one. That a deadlock might arise does not militate against our view of it, for that was just what was intended when either party attempted to take a partisan advantage of the other, and is the only way to compel non-partisan action; and on the other hand it was the last thing to be feared where other business was to be transacted. What is the meaning of the word " concur " ? Webster says:—" It is to meet on the same point; to agree; to act jointly; to unite in opinion; to assent; " and that concurrence is " a meeting of minds; agreement in opinion; union in design; implying joint approbation." How can it be said that the commissioners who stated that they would not vote upon the resolution or have anything to do with it, agreed, or acted jointly, or united in opinion, or assented to the transaction of the business; or that there was a meeting of minds, or an agreement in opinion, or a union in design, in the matter of making the appointments? The record states that but two intended to concur or did concur as a matter of fact. Is it so that the other two must, as a matter of law, be construed as having so concurred, although they said they would not vote, did not vote, and protested after the vote was announced? The decisions in other cases where a like requirement as to the manner of election exists, say not. *State* v. *Gray*, 23 Neb., 365 ; *Com.* v. *Wickersham*, 66 Penn. St., 134 ; *State* v. *Suterfield*, 54 Mo., 391 ; *State ex rel. Williams* v. *Edwards*, 114 Ind., 581 ; Dillon's Mun. Corp., 4th ed., §§ 230, 292. The reason for following these decisions is doubly apparent in this case, where the course which two of the

commissioners pursued is, as we claim, the exact manner in which they were expected by the legislature to stop the action of this board, when a portion of it should try to take a partisan advantage of the other portion, and the only manner in which the exact division of political power which lies at the foundation of the whole plan can have any effect. *Samis* v. *King*, 40 Conn., 306. Certainly, if they must either remain silent and have their votes counted " Aye," or vote in the negative and make a tie, and thus give the mayor the casting vote, which must be presumed to go party-wise, those who builded this structure have labored in vain and nothing has been effected by the amendment to the charter.

2. These appointments being illegal, the men have no title to their offices and are not entitled to pay for any service they may render, as the right to recover for such services belongs only to an officer *de jure*. *Samis* v. *King, supra*. This being true, a case of irreparable injury exists, as the plaintiff is a tax-payer, his money is being taken from him without his consent, and is threatened to be applied by the municipality to illegal purposes. The right to an injunction in such cases has always been recognized.

3. Even if this were not all true and these men were legally appointed, the plaintiff is still entitled to the relief sought. As a tax-payer of the city he has a right to insist that all the safeguards regulating the expenditure of his money shall be preserved, and that none of it shall be paid out except in the manner pointed out by the instrument which gives the power to take it away from him. By the legal ordinance of the city the common council shall not order bills of this character paid until they have been examined by the auditor and certified to as correct by these commissioners. And the language of the charter must govern here, and " the concurrence of three of them is necessary for the transaction of any business." Except as the charter gives them power to act, these commissioners are private citizens, and the approval of two of them is of no more validity than that of any other two citizens. It follows, then, for this reason, if for no other, that the injunction should be

continued until such time as the salaries proposed to be paid to these men have been approved by the proper officers. Should these officers refuse to act when they ought to do so, there is a way to compel action, but until such course had been taken no salaries should have been paid these men.

*G. W. Wheeler*, for the appellee.

CARPENTER, J.    This is an equitable action to restrain the defendant from paying salaries to certain policemen. There are two grounds on which it is claimed an injunction should issue: first, that the policemen were not legally appointed; and second, that the steps taken for their payment did not conform to the requirements of the city ordinances.

Their appointment devolved upon a non-partisan board of police commissioners, consisting of the mayor and two members from each of the two great political parties. The mayor presided, and could vote only when there was a tie. Any act of the board required the concurrence of three members.

In consequence of including West Stratford in the city limits, the common council, on March 19th, 1890, directed the board of police commissioners to appoint four additional patrolmen on the police force. On the 1st of July, 1890, a patrolman died, so that there were five to be appointed. On the 19th of July, the board being in session, a member introduced a resolution appointing the men in question. Thereupon two members announced that they would not vote upon it or have anything to do with it. The mayor put the question on the passage of the resolution; two members voted for it, two refrained from voting either way, and the mayor declared the resolution passed. The non-voting members protested, but the proceeding was recorded as declared. The men thus appointed entered upon the duties assigned them, and performed the services for which they now claim payment.

A city ordinance provides that a schedule of the salaries or pay of the officers and members of the police force, signed

and approved by the police commissioners, shall be handed to and examined by the auditor before being presented to the common council. The pay-roll of the police force, containing thereon the names of the five men in question, was presented to the council of the city for payment, and approved by the mayor and two of the commissioners. It had not been otherwise approved by the board, as on two occasions meetings of the board had been called for the purpose of approving it, but on each occasion only two members with the mayor were present. The common council directed payment. Soon after this the present suit was brought and a temporary injunction served. Upon these facts the Superior Court dissolved the injunction and dismissed the complaint. The plaintiff appealed.

1. Were the patrolmen legally appointed? Action was taken at a regular meeting of the board at which all the members were present. The board had been directed four months before to appoint four additional patrolmen to supply a want caused by the annexation of West Stratford to the city. A short time before one had died, so that, in the judgment of the common council, five more policemen were needed. An attempt to supply this need was met by two of the commissioners, not by any objection to the time or manner of making the appointment, nor by any objection to the character or competency of the men, but simply by a refusal to take any action in the matter. We are not told what their motive was; nor are we at liberty to indulge in conjecture. On the face of the record they appear as obstructionists, and as such we must treat them. As it was the duty of the board to appoint, it was their duty to act. By their refusal to vote they neglected their duty. The needs of the city demanded action. Sound policy requires that public interests should not suffer by their inaction. Had they voted against the resolution there would have been a tie, and the mayor would have given a casting vote. Had he voted in the affirmative the legality of the appointment could not have been questioned. But they did not vote although present. Their presence made a quorum.

A quorum was present, and all who voted, voted in the affirmative. Why was not the mayor justified in declaring the resolution passed? The silence of the non-voting members was acquiescence, and acquiescence was concurrence. Their previous declaration and their subsequent protest avail nothing. The test is, not what was *said* before or after, but what was *done* at the time of voting.

Counsel for the plaintiff contend that the legislature contemplated—indeed intended, that either party might at any time, if they suspected that the other intended a partisan advantage, take the course pursued in this case, and thus produce a dead-lock. We do not so read the charter. If that had been the intention it would have been more effectually accomplished by denying to the mayor the power to give a casting vote. The object of that provision was to prevent a dead-lock, and we see no evidence of an intention to vest in two members the power to cause one. It was doubtless supposed that all the commissioners would be fair-minded men, and that they would strive to agree upon a police force composed of the best men selected from both parties. If all the members really desired to accomplish that result, and acted like reasonable men, they could hardly fail. Unfortunately human nature is such that there was a possibility, even a probability, that occasionally the commissioners might not agree. The legislature, recognizing such an emergency, wisely provided that the mayor might untie the vote, deeming it far better for the community that there should be a partisan police rather than no police at all.

Upon principle two members could not, by inaction, prevent action by the board. Being present, it was their duty to vote. Had they done so, a result would have been certain. The most that they could have done would have been to make a tie; and then the mayor, by his vote, could have passed or rejected the resolution. Their presence made a quorum and made it possible for the board to act. It would be strange if by their mere neglect of duty they could accomplish more than they could by direct action. The legal

effect of their silence was an affirmative vote. And so are the authorities.

The 127th section of Angell & Ames on Corporations, 10th edition, reads as follows:—" After an election has been properly proposed, whoever has a majority of those who vote, the assembly being sufficient, is elected, although the majority of the entire assembly altogether abstain from voting; because their presence suffices to constitute the elective body, and if they neglect to vote it is their own fault, and shall not invalidate the act of the others, but be construed an assent to the determination of the majority of those who do vote. And such an election is valid, though the majority of those whose presence is necessary to the assembly, protest against any election at that time, or even the election of the individual who has a majority of the votes; the only manner in which they can effectually prevent his election, is by voting for some other qualified person: " citing *Oldknow* v. *Wainwright,* 2 Burr., 1017; *Rex* v. *Foxcroft,* id., 1020; *Crawford* v. *Powell,* id., 1016; *Oldknow* v. *Wainwright,* 1 W. Bla., 229.

The principle thus enunciated has been sanctioned and applied by some excellent authorities in this country. *Inhabitants of First Parish in Sudbury* v. *Stearns,* 21 Pick., 148; *Attorney Gen.* v. *Shepard et al.,* 62 N. Hamp., 383; *Walker* v. *Oswald,* 68 Md., 146; *St. Joseph Township* v. *Rogers,* 16 Wall., 644; *County of Cass* v. *Johnston,* 95 U. S. R., 360; *State ex rel. Shinnick* v. *Green,* 37 Ohio St., 227; *Rushville Gas Co.* v. *City of Rushville,* 121 Ind., 206.

There are cases which seem to regard those present and not voting as voting with the minority. *Commonwealth* v. *Wickersham,* 66 Penn. St., 136; *Launtz* v. *The People,* 113 Ill., 137.

Proceeding upon that theory we should come to the same result—a tie, untied by the casting vote of the mayor. He was not required to give a formal vote; the declaration of the result was sufficient. *Small* v. *Orne,* 79 Maine, 81; *Rushville Gas Co.* v. *City of Rushville,* 121 Ind., 212. But the weight of authority regards the non-voting members as

assenting to the action of the majority, whether in the affirmative or negative. In some instances a statute requires a majority of the whole number ; or, as in the Pennsylvania case, (*Commonwealth* v. *Wickersham, supra*), a majority of those present. In such cases those not voting are necessarily counted with the minority. But in the absence of some special provision of that nature, so counting them might result in absurd consequences or serious inconvenience. In many instances the silent vote added to the minority would change the result ; and in all cases it would be necessary to ascertain the number present and not voting, which would be attended with much inconvenience. But a presumed acquiescence in the result is attended with no such consequences. Hence we think that is the better view.

It is suggested that the " concurrence of three," necessary for the transaction of business, means an active concurrence and not a passive one. We do not think so. A passive concurrence may be, and often is, just as effectual as an active one. Silence is oftentimes as significant as speech, and conduct frequently contradicts words. Here then we had the " active concurrence," by their vote, of two members ; a " passive concurrence," by their silence, of the other two ; which, in legal effect, was an *agreement by all* that the resolutions should pass.

2. Is the failure to comply with the city ordinance, under the circumstances, a sufficient reason for continuing the injunction ?

That ordinance was not intended to put it in the power of any one or more of the city officials unjustly to deprive the members of the police of their regular pay. An attempt to use it for that purpose is an abuse rather than a legitimate use. The ordinance was designed for the protection of the city by providing an orderly and systematic method of paying its bills. It was competent for the council to waive its provisions, if, in its judgment, justice required it. The direction to pay was a waiver. It is no part of the duty of a court of equity to enforce by injunction an ordinance enacted for the benefit of the city, when the city has waived it,

unless it clearly appears that tax-payers are likely to suffer unjustly. It does not so appear in this case.

There is no error in the judgment.

In this opinion LOOMIS, SEYMOUR and TORRANCE, JS., concurred. ANDREWS, C. J., dissented.