STATE EX REL. NICHOLAS KENNEY *v.* GEORGE RANSLOW

SUPERIOR COURT    NEW HAVEN COUNTY    FILE No. 24691
AT WATERBURY

Memorandum filed March 12, 1959

*Michael V. Blansfield,* of Waterbury, for the plaintiff.

*Francis J. Summa,* of Waterbury, for the defendant.

RYAN, J. This is an action of quo warranto to require the defendant to answer to this court by what warrant he claims to hold the office of chief of police of the town of Wolcott. The parties have stipulated to most of the facts but a hearing was required to present evidence on matters wherein the stipulation was inconclusive. In this proceeding the burden of proof is upon the defendant to establish his legal right to the office. *State ex rel. Jewett* v. *Satti,* 133 Conn. 687.

The defendant is forty-one years of age and has been a resident of the town of Wolcott for twenty-one years. In 1939 he was appointed a policeman, and he served as a regular member of the Wolcott police department on a part-time basis for eighteen years. In February, 1957, he tendered his resignation as a policeman to the chairman of the board of police commissioners. Despite the fact that the minutes of the board do not show its acceptance, he did no further work as a policeman, and there can be no doubt that he had terminated his service with the department. On or about July 1, 1958, he was appointed a member of the board of police commissioners and was elected its chairman. Thereafter he performed all the duties required of him as chairman and as a member of the board. On November 6, 1958, there was a meeting of the board which was called by the defendant and attended by all three members of the board. At the meeting Wabuda, the secretary, nominated the defendant for the position of chief of police, which nomination was seconded by the defendant. Upon the vote on the nomination, Wabuda voted for the defendant, and the defendant voted for himself. There was conflicting evidence as to whether Kenney, the plaintiff, refrained from voting or voted against the nomination. I find that Kenney declined to vote and that he was physically present throughout the entire meeting. This is supported by the minutes of the meeting and by the testimony of Ranslow and Wabuda.

One of the questions which must be answered is whether by such vote the defendant was properly chosen chief of police. When a member of an appointing body is appointed to an office by his own vote, if his own vote is necessary to give him a majority, such appointment is void. *State ex rel. Oakey* v. *Fowler,* 66 Conn. 294, 298; *State ex rel. Bergin* v.

*Goodrich,* 86 Conn. 68, 71. The parties have stipulated that the board voted on September 3, 1958, to hold their meetings and abide by Robert's Rules of Order. This being so, it was not required that the nomination of the defendant be seconded. Robert, Rules of Order (75th Ann. Ed.) § 5, pp. 36, 37. It is also provided that a candidate has a majority when he has more than half the votes cast, ignoring blanks. Id., p. 24. "Any legitimate motion not included among those mentioned below as requiring more than a majority vote, requires for its adoption only a majority, that is, more than half of the votes cast, ignoring blanks, at a legal meeting where a quorum is present, unless a larger vote is required by the rules of the assembly." Id., § 48, p. 202. Nominations are not listed in this section as requiring more than a majority vote. It is the claim of the defendant that his election was unanimous since his vote and that of Kenney were blanks. It is true, of course, that "no motion is in order that conflicts with the laws of the nation or state." Id., § 47, p. 201.

In the city of Bridgeport, by its charter, the board of police commissioners, by whom policemen were to be appointed, consisted of the mayor and two members from each of the two great political parties, the mayor to preside and have a vote only in case of a tie and any action requiring a concurrence of three members. There being policemen to be appointed, a resolution was offered at a regular meeting of the board, when all were present, appointing certain persons named. Thereupon two members announced that they should not vote, but remained in the room. The mayor put the resolution to a vote, and two members voted for it; the other two refrained from voting and the mayor thereupon declared the resolution passed. The two nonvoting members protested against this ruling. It was held by our Supreme Court of Errors that the silence of

the nonvoting members when the vote was put was
a concurrence in the passage of the resolution and
that it was legally passed. "On the face of the rec-
ord they appear as obstructionists, and as such we
must treat them. As it was the duty of the board
to appoint, it was their duty to act. By their refusal
to vote they neglected their duty. . . . But they did
not vote although present. Their presence made a
quorum. A quorum was present, and all who voted,
voted in the affirmative. . . . The silence of the non-
voting members was acquiesence, and acquiesence
was concurrence. . . . The legal effect of their si-
lence was an affirmative vote." *Somers* v. *Bridge-
port,* 60 Conn. 521, 526, 527.

A majority of votes actually cast is sufficient,
even though the number of such votes may be less
than a quorum, provided there are sufficient mem-
bers present, whether voting or not, to constitute a
quorum. *People ex rel. Woods* v. *Crissey,* 91
N.Y. 616; see also *Martin* v. *Ballinger,* 25 Cal.
App. 2d 435; *People ex rel. Sanders* v. *Hendrick,* 93
Colo. 512; *State ex rel. Miller* v. *Marshall,* 135
Fla. 214; *Launtz* v. *People ex rel. Sullivan,* 113
Ill. 137; *Rushville Gas Co.* v. *Rushville,* 121 Ind. 206;
*Napier* v. *Gay,* 264 Ky. 359; *Zeiler* v. *Central Ry.
Co.,* 84 Md. 304; *Clark* v. *City Council,* 328 Mass. 40;
*Attorney General* v. *Shepard,* 62 N.H. 383; *State
ex rel. Shinnick* v. *Green,* 37 Ohio St. 227; *Common-
wealth* v. *Fleming,* 23 Pa. Super. 404; *State ex rel.
Osborn* v. *McAllen,* 127 Tex. 63; *State ex rel. Bur-
dick* v. *Tyrrell,* 158 Wis. 425. That the result
reached in this case is not new is indicated by the
case of *Oldknow* v. *Wainwright,* 2 Burr. 1017,
97 Eng. Rep. 683, decided in 1760. In upholding the
validity of an election where twenty-one of the
twenty-five members of the elective body met but
only nine voted affirmatively for the nominee, the
other twelve not voting and eleven of them protest-

ing against an election being held at that time, Lord Mansfield said (p. 1021): "Whenever electors are present, and don't vote at all, (as they have done here) 'they virtually acquiesce in the election made by those who do.'"

Both under Robert's Rules of Order and the judicial precedent of Connecticut and other jurisdictions, I find that the defendant received a majority vote for the office of chief of police. Obviously, his vote cannot be counted in his own behalf. Under Robert's Rules of Order he had more than half the votes cast, ignoring blanks. Under the view taken in *Somers* v. *Bridgeport,* supra, there were two votes cast for the defendant—Wabuda's affirmatively and Kenney's by his silence. Had Kenney voted against the nomination, Ranslow could not have received a majority vote. By refusing to vote, Kenney acquiesced in the appointment of Ranslow.

No. 199 of the Special Acts of 1957 (28 Spec. Laws 233) provides as follows concerning the Wolcott board of police commissioners: "Said board shall fix the number and designation of all members of the police department, one of whom shall be a chief of police who shall be the chief administrative officer in the department." The plaintiff claims that since the defendant was not a member of the police force on November 6, 1958, he could not be appointed chief of police. The act does not so provide. Obviously, a chief of police is a member of the police department with all the statutory powers conferred on policemen. It is not required that he be a policeman at the time of his appointment as chief. Had the legislature so intended, it could have set it forth in unequivocal language.

Section 6 of No. 525 of the Special Acts of 1937 (22 Spec. Laws 945) provides as follows: "No person shall be appointed a policeman in the town of

Wolcott until such person shall have passed an examination prescribed by said board as to his educational, physical and general qualifications, including a test of his knowledge of the motor vehicle laws of this state and the powers and duties of constables." The defendant presented a medical certificate to the board and was given a very informal oral examination by the secretary of the board, with all members present. Having in mind that Ranslow was a regular member of the department for eighteen years as a policeman on a part-time basis, it cannot be said to be inadequate. In any event, § 6 refers to the examination of a policeman and has no application to the appointment of a chief of police. The act contains no such requirement.

The decisions of some states hold that it is contrary to public policy to permit an officer having an appointing power to use such power as a means to confer an office upon himself or to permit an appointing body to appoint one of its own members. *Bradley* v. *City Council,* 212 S.C. 389; see also *Commonwealth ex rel. McCreary* v. *Major,* 343 Pa. 355. Connecticut, however, has not adopted this view.

The plaintiff claims that the office of police commissioner and chief of police are incompatible. There can be no doubt that this is so. *State ex rel. Schenck* v. *Barrett,* 121 Conn. 237. At common law, and under constitutional and statutory prohibitions against the holding of incompatible offices, a person who accepts and qualifies for a second and incompatible office is generally held to vacate, or by implication resign, the first office, so that no judicial proceedings are necessary to determine the title. 42 Am. Jur. 940, § 78, and cases cited. Where a person holding the office of justice of the peace is elected during his term of office to that of constable in the same town, which office he accepts, his tenure

of the latter office is not invalidated by the statute which provides that "no judge or justice of the peace shall hold the office of sheriff, deputy sheriff or constable." *Magie* v. *Stoddard,* 25 Conn. 565. When the defendant accepted and qualified for the office of chief of police, the office of police commissioner was vacated, and the incompatibility of the offices does not prevent him from holding the office of chief of police.

Judgment may enter for the defendant.