

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

June 9, 1965

Honorable Jack N. Fant
County Attorney
El Paso County
El Paso, Texas

Opinion No. C-452

Re: Whether, upon resignation of
the present County Judge, an
incumbent County Commissioner
may tender his resignation
and thereupon be appointed
County Judge by other County
Commissioners acting as the
Commissioners Court, and
related question.

Dear Sir:

Your request for an opinion on the above-captioned
matter reads as follows:

"The Commissioners Court of El Paso County,
Texas, with the exception of County Judge Glenn
E. Woodard, on the 20th day of May, 1965, requested
that I obtain your department's opinion on the
above stated questions. Their request states as
follows: 'Inasmuch as County Judge Glenn E.
Woodard has announced that he will resign his
post as County Judge of El Paso County on or
about July 1st, 1965; and inasmuch as County
Commissioner Tom Mays has been unanimously
selected by his fellow Commissioners to succeed
Judge Woodard as County Judge, and has indicated
that he will resign his commission as County
Commissioner at that time, the El Paso County
Commissioners Court hereby respectfully requests
that you obtain from the Attorney General of
the State of Texas an opinion as to the legality
of Commissioner Mays' succeeding Judge Woodard
as County Judge of El Paso County.' The foregoing
request of me for an opinion was signed by all
four County Commissioners of El Paso County,
Texas, including Tom Mays, County Commissioner
of Precinct No. 4.

"Before setting out my brief, authorities
and conclusions herein on these matters, it is
first necessary to furnish you with the pertinent
facts surrounding the question or questions

-2140-

involved. Approximately ten days ago our incumbent County Judge, Glenn E. Woodard, through various news media, announced, and it is a matter of common knowledge, that he intends and will resign his post as County Judge of El Paso County, Texas, on or about July 1, 1965. The senior Commissioner of this County, who has held this post for approximately eight years, is County Commissioner Tom Mays of Precinct No. 4. Judge Woodard, having made his announcement that he will resign on or about July 1, 1965, the Commissioners Court has met on at least two and I think three occasions and have decided to unanimously select Mr. Mays as a successor to Judge Woodard as County Judge.

"Upon receipt of the formal request by the Commissioners Court for this opinion, which was in writing, I asked to have an audience with them, which I did, however Judge Woodard was absent but all four Commissioners attended. At this meeting I asked the County Commissioners if Judge Woodard intended to resign first at the same meeting and then upon his tender of resignation and the acceptance of the same by the Court, if they intended then to appoint Commissioner Mays to this position. My answer was 'yes' from the Commissioners. I explained to them that perhaps if I predicated this opinion purely upon this point that it might be necessary in the future to obtain an opinion as to whether or not Mr. Mays might resign prior to the time that Judge Woodard resigned and have his vacancy filled, then attempt or desire to be appointed to the County judgeship, all of this assuming that it would be at the same meeting of the Commissioners Court on or about July 1, 1965. The Commissioners then after some discussion and my explanation evidenced an intention that I also obtain an opinion as to the latter question.

"I therefore respectfully request your department's opinion upon the following two questions:

Hon. Jack N. Fant, page 3 (C-452)

(1) Whether, upon the resignation of the
County Judge of El Paso County, Texas, an
incumbent County Commissioner, in this
instance County Commissioner of Precinct
No. 4, may then tender his resignation
and thereupon be appointed County Judge
by other Commissioners acting as a
Commissioners Court, this assuming that
the Commissioners Court has accepted the
resignation of the County Judge and a
vacancy has been created.

(2) Whether the incumbent Commissioner,
that is County Commissioner of Precinct
No. 4 of El Paso County, might resign his
present post at the same meeting and his
successor be named by the County Judge,
and then the incumbent County Judge tender
his resignation and the same be accepted
by the Court, and this having been done
the Court appoint the former Commissioner
of Precinct No. 4 as County Judge of
El Paso County, Texas."

The first question has been considered in two
previous Attorney General's opinions, both of which held that
a public board cannot appoint one of its members to an office
or position while he is still a member of the board. Opinion
No. 0-410, dated March 15, 1939, held that a member of the
Board of Directors of Texas Technological College was not
eligible for appointment to the presidency of the College.
The member had submitted his resignation from the Board and
did not participate in the vote on his appointment, but at
the time the appointment was made the Governor had not
accepted his resignation or appointed his successor. The
opinion held that under the "holdover" provisions of Article
XVI, Section 17 of the Texas Constitution, his membership
continued until his successor had qualified, and that his
appointment while still a member of the Board was void as
being contrary to public policy.

In Opinion No. 0-789, dated May 11, 1939, the county
judge had died and one of the county commissioners wanted to
apply for appointment to fill the vacancy. The question was
whether a member of the commissioners court, by tendering his
resignation as commissioner and having it accepted by the
remaining three commissioners, would be eligible and legally
qualified to be appointed county judge in the event the
remaining three commissioners saw fit to appoint him. The

opinion noted that the commissioner's membership on the court would not be severed until his successor had qualified (Article XVI, Section 17 of the Texas Constitution) and that the vacancy in the office of county judge would have to be filled before the commissioner could effectuate his resignation, since no one was authorized to appoint his successor except the county judge (Article 2341, V.C.S.). It followed Opinion No. O-410 in holding that the commissioner was not eligible for appointment to the judgeship.

The holdings in these two opinions are based on the common law rule declaring such appointments to be void as contrary to public policy. That rule becomes the law of this State by virtue of Article 1, V.C.S., which adopts the common law insofar as it does not conflict with the Constitution and statutes of Texas, and we may recognize it as the law even if no Texas court has previously declared the rule. State ex rel. Smith v. Bowman, 184 Mo. App. 549, 170 S.W. 700 (1914).

We have failed to find any Texas case squarely in point, but at least one case has recognized the existence of the rule. Ehlinger v. Clark, 117 Tex. 547, 8 S.W.2d 666 (1928), is frequently cited in support of the rule, but an analysis of the opinion shows that the case appears to have been decided under the common law principle that a person cannot hold two incompatible offices at the same time rather than under the principle here involved, although some of the reasoning and conclusions seem to be more nearly in line with the latter principle. St. Louis Southwestern Ry. Co. of Texas v. Naples Independent School Dist., 30 S.W.2d 703 (Tex.Civ.App. 1930), held that the board of trustees of a school district, in fulfilling its duty to appoint a board of equalization upon having exercised its discretion to appoint a tax assessor for the district instead of having the taxes assessed by the county tax assessor, could not empower itself to sit as the board of equalization. There is some question whether the principle with which we are now concerned was the one on which the decision should have been based or was based, but in any event the court clearly recognized the existence of the rule in the following quotation from the opinion (30 S.W.2d at 706):

"The statute plainly evidences the will of the Legislature to grant the power to the board of trustees to select and appoint an official board of equalization of assessments to be composed, not of themselves, but of other qualified and suitable persons. The words of the grant of authority, which alone can justify the action of the board of trustees, cannot be extended by implication or inference to include the authority

to choose and appoint themselves to be the board
of equalization. In this view of the statute
the board of trustees were without any authority,
and it was an absolutely void act, as must be
legally regarded, to appoint themselves as the
board of equalization of assessments. The
principle is set out in 46 C.J. § 43, p. 940,
namely: 'It is contrary to the policy of the
law for an officer to use his official appoint-
ing power to place himself in office, so that,
even in the absence of statutory inhibition,
all officers who have the appointing power are
disqualified for appointment to the offices
to which they may appoint.'"

The full extent of the common law rule is summarized
in the following quotation from 67 C.J.S. 130, Officers, § 20:

"It is contrary to the policy of the law for
an officer to use his official appointing power
to place himself in office, so that, even in the
absence of a statutory inhibition, all officers
who have the appointing power are disqualified
for appointment to the offices to which they may
appoint; and similarly a member of an appointing
board is ineligible for appointment by the board,
even though his vote is not essential to a majority
in favor of his appointment, and although he was
not present when the appointment was made, and
notwithstanding his term in the appointing body
was about to expire; nor can the result be accom-
plished indirectly by his resignation with the
intention that his successor shall cast his vote
for him."

The great weight of authority among cases decided
under the common law in other States is against eligibility
of a person for an appointment to be made by a board of which
he is a member. The following cases discuss the public policy
which forbids the appointment and collect some of the authorities
which support the rule: Meglemercy v. Weissinger, 140 Ky. 353,
131 S.W. 40, 31 L.R.A.(N.S.) 575 (1910); State v. Thompson,
193 Tenn. 395, 246 S.W.2d 59 (1952); Hetrich v. County Com'rs
of Anne Arundel County, 222 Md. 304, 159 A.2d 642 (1960).
Some cases do not go beyond the necessity of the particular
fact situation and hold merely that a member cannot vote for
himself, without declaring his ineligibility for appointment
by other members of the board, but many cases do reach the

question of eligibility and hold against it. The only decisions
we have found which have rejected the rule of ineligibility
are by the courts of Connecticut, which hold that a member
cannot vote for himself but that he is not rendered ineligible
for appointment upon the vote of other members. State ex rel.
Oakey v. Fowler, 66 Conn. 294, 32 Atl. 162, 33 Atl. 1005
(1895); State ex rel. Kenney v. Ranslow, 154 A.2d 526 (Conn.
Super. 1959).

The policy of the law is stated in Meglemercy v.
Weissinger, supra, as follows (131 S.W. at 41):

> " * * * It is of the highest importance that
> municipal and other bodies of public servants
> should be free from every kind of personal influence
> in making appointments that carry with them services
> to which the public are entitled and compensation
> that the public must pay. And this freedom cannot
> in its full and fair sense be secured when the
> appointee is a member of the body and has the close
> opportunity his association and relations afford
> to place the other members under obligations that
> they may feel obliged to repay. Few persons are
> altogether exempt from the influence that intimate
> business relations enable associates to obtain,
> and few strong enough to put aside personal
> considerations in dispensing public favors. And
> it is out of regard for this human sentiment and
> weakness, and the fear that the public interest
> will not be so well protected if appointing
> bodies are not required to go outside their
> membership in selection of public servants,
> that the rule announced has been adopted, and
> ought to be strictly applied."

In State ex rel. Bove v. McDaniel, 52 Del. 304, 157 A.2d 463,
466 (1960), the court said:

> " * * * Both the common law and the statute
> demand that the power of appointment be exercised
> fairly and impartially. In order to attain this
> purpose it is important that the deliberations
> of the appointing body not only be free from
> wrongdoing but free from suspicion of wrong as
> well."

In view of the foregoing authorities, we are of the
opinion that your first question should be answered in the
negative. However, in connection with your second question,

Hon. Jack N. Fant, page 7 (C-452)

if a Commissioner unconditionally resigns his present position and the County Judge appoints a successor who qualifies by taking the proper oath and making the necessary bond, then the former Commissioner would have severed his connection as an officer and would be in the same position as any other applicant who might apply for the office of County Judge, should there become a vacancy in the office of County Judge of that county.

The Attorney General's office cannot pass on factual questions; neither is this opinion to be construed as suggesting that the Commissioners Court appoint a certain individual as County Judge, for this is a matter for the exclusive determination of the Commissioners Court of a county if there should be a vacancy in such office.

## SUMMARY

A County Commissioner who has tendered his resignation for the office continues to be a member of the Commissioners Court pursuant to the provisions of Section 17 of Article XVI of the Texas Constitution until his successor has been appointed and has qualified and under these circumstances would be ineligible to be appointed by the Commissioners Court to the office of County Judge because such an appointment would be contrary to public policy.

However, if the County Commissioner tenders his resignation unconditionally and it is accepted by the County Judge, and in turn the County Judge appoints a successor who qualifies for such office, then the former County Commissioner would be in the same position as any other applicant who might apply for the office of County Judge in case there is a vacancy.

Yours very truly,

WAGGONER CARR
Attorney General

By _John H. Banks_

John H. Banks
Assistant

JHB:sj

-2146-