[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the termination of a tenured teacher under section 10-151 (f) of the General Statutes. The plaintiff was one of seven employees in the Industrial Arts Department, and the Fairfield Board of Education [hereafter called the Board] decided to eliminate 1.6 positions. He was notified by the superintendent of schools by letter dated June 23, 1992 that he was being terminated pursuant to section 10-151 (d)(5) of the General Statutes. Section 10-151 (d) allows termination of the contract of a tenured teacher for any one of six reasons including:
 "(5) Elimination of the position to which the teacher was appointed or loss of a position to another teacher, if no other position exists to which such teacher may be appointed if qualified, provided such teacher, if qualified, shall be appointed to CT Page 8756 a position held by a teacher who has not attained tenure, and provided further that determination of the individual contract or contracts of employment to be terminated shall be made in accordance with either (A) a provision for a layoff procedure agreed upon by the Board of Education and the exclusive employees' representative organization or (B) in the absence of such agreement, a written policy of the Board of Education."
Here there was a collective bargaining agreement between the Board and the Fairfield Education Association for the period of July 1990 through June 1993. Article V contained the separation and recall procedures, including section 5.1.1 which provided:
 "Where there are more individuals within a category than necessary to reduce, the least senior teacher shall be terminated before more senior teachers, provided that those teachers remaining are the most qualified to perform the work available after the reduction, based upon the following criteria: education, certification, unique qualifications, salary status, and job description analysis."
It also contained a point system to determine the best qualified teachers within a category. Section 5.1.2.6 allowed a review of point assignments by the superintendent of schools, and section 5.1.2.7 states that "unless the teacher or immediate supervisor requests an update for new information, the points assigned will remain valid for a three-year period." After receiving notice of termination, the plaintiff requested a hearing before an impartial panel under section 10-151 (d) C.G.S. The three member panel held a hearing on August 19, 1992 and made its findings on September 16, 1992. Two of the three arbitrators made 13 findings and recommended that the plaintiff should have his total number of points restored to 81, an increase from the 61 points which resulted from a reevaluation of points, and which had placed the plaintiff at the bottom of his seven member category of employees. CT Page 8757
One arbitrator accepted findings 1 through 10 inclusive and 13, but proposed modified findings 11 and 12. Finding 11 amounts to a factual and legal conclusion, that the school administration was required by a prior settlement of a grievance filed by another teacher to make a fee valuation and reassignment of points of all teachers within Category D of the Industrial Arts Department. Finding 12 stated that the plaintiff's immediate supervisor had requested and prepared a report which resulted in a reevaluation and reassignment of points by the superintendent of schools.
The Board reviewed the findings of the arbitrators as is required by section 10-151 (d) at a public hearing on September 24, 1992. It accepted the report of the arbitrators, substituting findings of fact #11 and #12 of the dissenting arbitrator. The Board notified the plaintiff the next day that it had voted to terminate the plaintiff's employment "after considering the findings and recommendations of the hearing panel. The reason is that the Board of Education found the dissenting findings #11 and #12 correct and therefore accepted the superintendent's recommendation which was predicated on the elimination of the position to which you had been appointed." The plaintiff then appealed under section 10-151 (f), and has standing to maintain this appeal.
When an appeal is taken under such section 10-151 (f) from a decision of a board of education to terminate a tenured teacher, the court determines whether the board acted illegally, but does not substitute its judgment for that of the board. Rado v. Board of Education, 216 Conn. 541, 555. When the board terminates a teacher's contract it is an administrative agency acting in a quasi-judicial capacity. Miller v. Board of Education, 166 Conn. 189, 191; Catino v. Board of Education,174 Conn. 414, 417. It has the duty to give the tenured teacher a fair hearing and to terminate the employment contract only for one or more of six statutory reasons, which must be supported by a preponderance of the evidence. Id, 417. Where, as here, the Board delegates its fact finding function to an arbitration panel, it has discretion to accept or reject a recommendation from the impartial hearing panel, but it is bound by the panel's findings of fact unless unsupported by the evidence. Rado v. Board of Education, supra, 555; Catino v. Board of Education, supra, 417, 418. While the Board is bound by the arbitrator's finding of fact, it is not bound by its legal conclusions or by its recommendations. Petrino v. Board of Education, 179 Conn. 428, CT Page 8758 430.
In some cases the findings of the hearing panel are unanimous, but here one arbitrator dissented on findings #11 and and the Board followed those findings. The plaintiff has identified no case, and the court is not aware of any, which holds that the Board must go along with the factual findings of a majority of the panel, and that it cannot adopt findings of fact made by a dissenting panel member. While the Board cannot invent its own findings of fact, it can adopt some of the findings of a dissenting arbitrator. Otherwise the Board would be rubber stamping what may be incorrect or disputed findings of fact. The better rule is that the Board can adopt findings from either the majority or minority of the hearing panel, but the findings that are made must be supported by the evidence before it.
Finding #11 was a legal opinion or interpretation. The majority thought that the settlement of the prior grievance did not "revoke" section 5.1.2.7 of the Collective Bargaining Agreement. The dissenting arbitrator took the opposite position, namely that the settlement of the grievance, which called for reevaluation and reassignment of points for teachers in the plaintiff's category had to be followed even though it was at variance with the Collective Bargaining Agreement. In any event, the Board did not have to follow the legal opinion or conclusion of any of the arbitrators. Petrino v. Board of Education, supra, 430. As to finding #12, the majority found that neither the plaintiff or his immediate supervisor requested a reevaluation or reassignment of points, while the dissenting arbitrator found that the plaintiff's immediate supervisor made such a request. Where, as here, evidence in the record and its interpretation is conflicting, the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. Huck v. Inland Wetlands and Water Courses Agency, 203 Conn. 525, 542. The credibility of witnesses and the determination of factual issues are matters for the Board to decide. Lawrence v. Kozlowski, 171 Conn. 705, 708. The court on appeal cannot substitute its judgment for that of the Board in electing which finding to follow. Rado v. Board of Education, supra, 555.
Elimination of a teaching position is a valid ground for termination under the statute, section 10-151 (d)(5). The CT Page 8759 Board's findings and conclusions must be upheld if the grievance settlement allowed a variance from the Collective Bargaining Agreement, since termination of an individual contract requires the Board to follow "a provision for a layoff procedure agreed upon by the Board of Education and the exclusive employees' representative organization." Section 10-151 (d)(5)(A) C.G.S. The refusal to bargain in good faith with the union representative for an appropriate bargaining unit is a prohibited practice. Section 10-153e(b)(4) C.G.S. The duty to bargain in good faith continues after initial contract negotiations are over, and includes the duty to bargain in good faith in the grievance arbitration process. Board of Education v. State Board of Labor Relations, 217 Conn. 110, 120, 121. "The grievance-arbitration process is as much a part of collective bargaining as the act of negotiating the contract." Id, 121; Genovese v. Gallo Wine Merchants, Inc., 226 Conn. 475,493, citing United Steelworkers v. Warrior Gulf Navigation Co., 363 U.S. 574, 581. Parties to a contract may by a later agreement between them vary the terms of the original contract. Resolution of a grievance, resulting in a variation from the terms of the collective bargaining agreement, is binding on the parties and supersedes the prior agreement to that extent. The plaintiff identifies no authority requiring the union and the Board to draw up and sign a new collective bargaining agreement every time they resolve a grievance to their mutual satisfaction. Accordingly, the Board properly followed the procedures agreed to when the grievance was settled, which in turn allowed it to deviate from the terms of the prior collective bargaining agreement. The grievance procedure allowed the superintendent to reassign points after reevaluating the teachers in the plaintiff's category, and the Board's decision to terminate the plaintiff, because he then came out in last place, was justified.
The next claim is that the defendant failed to consider section 5.1.1 of the Collective Bargaining Agreement because the plaintiff had the most seniority of any teachers in Category D. That argument overlooks the part of section 5.1.1 which gives priority to senior teachers "provided that those teachers remaining are the most qualified to perform the work available after the reduction", based upon several stated factors. When those factors were applied as set forth in the Collective Bargaining Agreement, the plaintiff had the fewest number of points, and his seniority was not controlling. CT Page 8760
The plaintiff also claims that the defendant failed to give reasons for termination of the plaintiff, which violated his due process rights. A tenured teacher who is discharged is entitled, as a matter of constitutional law, to a written statement of the decision reached, the reasons for the termination and a fair summary of the evidence relied upon. Lee v. Board of Education, 181 Conn. 69, 79, 80; Zanavich v. Board of Education, 8 Conn. App. 508, 510, cert. denied, 201 Conn. 809. The purpose of this is to minimize the potential for improper action by the Board. Lee v. Board of Education, supra, 80. In this case the plaintiff had been clearly informed before the hearing that he was being considered for termination because of elimination of his teaching position. This was a clear and specific reason, unlike some of the other more general grounds in section 10-151 (d), such as insufficiency, incompetence, insubordination, immoral misconduct, disability or "other due and sufficient cause." See section 10-151 (d) subsections (1) through (4) and (6). The post hearing discharge letter September 25, 1992 also stated that the reason was the elimination of his teaching position, and the Board's acceptance of the findings of fact of the hearing panel with findings 11 and 12 of the dissenting panelist. While the plaintiff was entitled to due process, once it is determined that due process applies, the question remains what process is due. Bartlett v. Krause, 209 Conn. 352, 369. The decision need not be in great detail, and must only be sufficient for the court reviewing the administrative determination to determine whether the decision was lawfully reached. Id, 380; Lee v. Board of Education, supra, 82. It must be kept in mind, however, that the Board is "a group of laymen who may not always express themselves with the nicety of a Philadelphia lawyer. Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions." Couch v. Zoning Commission,141 Conn. 349, 358. The Board's decision adequately apprised the plaintiff of the reason and factual basis for the plaintiff's termination.
There is a related claim that the defendant's failure to identify how the individual members of the board voted invalidates its decision. No legal authority has been provided for that claim. There is no claim that the letter of September 25, 1992 incorrectly reported that the Board had voted on September 24, 1992 to terminate the plaintiff's employment, or that the vote was invalid because of lack of a quorum or some CT Page 8761 other procedural problem. Where a quorum of a municipal agency present, a majority of the votes actually cast is sufficient even though the number of votes is less than a quorum, provided there are a sufficient number of members present, whether voting or not, to constitute a quorum. Fleishman v. Connecticut Board of Examiners In Podiatry, 22 Conn. App. 181, 186; Somers v. City of Bridgeport, 60 Conn. 521, 526, 527. In fact, when a quorum is present and a vote is taken, non-voting members are considered as having concurred with the result of the vote. Id, 527. The outcome of the Board's vote is the same whether it was unanimous or only passed by a bare majority. Moreover, the plaintiff was present at the meeting of September 24, 1992, and from that and the minutes of the meeting could ascertain how specific Board members voted. There was no requirement in section 10-151 (d) for the notice of the Board's decision to spell out how each Board member voted.
The final claim is that the arbitrator selected by the defendant had a conflict of interest since he is employed by the Town of Fairfield. One of the three arbitrators, Donald Agard was apparently the Director of Human Resources for Fairfield. Section 10-151 (d) provides how the impartial hearing panel of three members is selected; the Board of Education selects one, the teacher selects another, and those two panel members choose the third arbitrator. Inherent in this system of appointment is that the panel members selected by the Board may favor its position, while the arbitrator selected by the teacher may side with him. The standard for disqualification for conflict of interest in teacher termination proceedings is stated in Rado v. Board of Education, supra, 556. The mere appearance of bias does not disqualify an arbitrator; "a presumption of impartiality attends administrative determinations, and the burden of establishing a disqualifying interest on the part of an adjudicator rests upon the one seeking disqualification. To overcome the presumption, the plaintiff must demonstrate actual bias, rather than mere potential bias, of the Board members challenged, unless the circumstances indicate a probability of such bias `too high to be constitutionally tolerable'." Id, 556 (some citations and material omitted). No evidence of bias was produced. Moreover, the interest of Agard would at most be a personal interest as defined in Anderson v. Zoning Commission, 157 Conn. 285, 290, 291, which is balanced by the concept that local governments would be seriously handicapped if any conceivable interest, no matter how remote and speculative, would require disqualification of agency CT Page 8762 members. Id, 291; Petrowski v. Norwich Free Academy, 199 Conn. 231,242. Finally, even if Agard did have a conflict of interest, the plaintiff waived it by failing to raise it before the arbitrators and the Board made their decisions. A participant in the administrative process with knowledge of the potential conflict of interest cannot sit back and anticipate a favorable decision, and then raise the issue when the agency's decision is against him. Henderson v. Department of Motor Vehicles, 202 Conn. 453, 462; Clisham v. Board of Police Commissioners, 223 Conn. 354, 367.
The Board was faced with a difficult decision of having to eliminate, presumably for budgetary reasons, at least one teacher in the plaintiff's department. While this resulted in the discharge of the plaintiff rather than one of the other teachers, the Board acted with proper motives and followed proper statutory procedures. Even if the evidence is conflicting on whether the Board properly evaluated all seven teachers and applied its point system, the court on appeal cannot substitute its interpretation of the evidence for that of the Board or the arbitrators, but is limited to deciding whether the Board acted illegally. Rado v. Board of Education, supra, 555.
The appeal is dismissed.
ROBERT A. FULLER, JUDGE