[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the failure of the Bridgeport Planning Zoning Commission to approve a coastal site plan application of the plaintiff, U-Haul of Connecticut, which raises questions as to proper voting procedures of the commission and the number of affirmative votes required on the application. The property which is the subject of this appeal is located at 3025-3063 Fairfield Avenue in a Business 1 zone. The applicant intends to use the property for a permitted use in the zone, and proposed to remodel an existing building to provide storage bins for customers to store personal property. The business of storage and retail sales would be conducted entirely within the building. All of the proposed uses and the parking of vehicles on the CT Page 9034 property are permitted uses in the zone. The proposal required the expansion of the parking area by about 40 percent, resulting in spaces for 21 additional vehicles. A corner of the property, the area where the parking is to be expanded, is within the coastal boundary, as defined in § 22a-94 of the General Statutes, as it is within 1,000 feet from the mean high water mark or the inland boundary of tidal wetlands. Even though the proposed use for the subject property is a permitted use, since it is within the coastal boundary it required coastal site plan review under § 22a-109 of the General Statutes.
As discussed below, there was some confusion among the commission members as to the voting procedures on the coastal site plan for the property after the public hearing on December 13, 1993. At that time, four commission members voted to approve the plan, assigning the following reasons for their action: (1) the project, as submitted, meets with all applicable requirements of the Coastal Area Management Act; and (2) the granting of the petition would not cause any unacceptable adverse impacts on the coastal area. Three commission members voted against the application for the following reasons:
 "(1) Gilman Street, a major route to St. Mary's, would be compromised by inexperienced drivers of trucks which creates a hazard for traffic on Gilman as well as residents on Mountford;
 (2) the maintenance condition of the trucks which might tend to leak fluids in an area where some of the run-off goes to Ash Creek;
 (3) Fairfield Avenue has become, as part of the coastal management area, a seaside shopping area, and the proposed use is not consistent with the atmosphere or use of the other businesses.
At the December 13, 1993 meeting the question was raised whether the chairman was also entitled to vote on the application under the bylaws or procedures of the commission. The application was tabled after the initial vote to a meeting on December 28, 1993. At that time the commission was advised by its corporation counsel that five votes were needed and that the chairman could only vote to break a tie. The commission failed to take another CT Page 9035 vote, and it was determined that the vote of four to three at the prior meeting was the vote of the commission, and that in the absence of five affirmative votes, the application was denied. The reasons assigned by the minority of the commissioners who voted at the previous meeting were considered the reasons for denying the application.
This appeal was then taken by U-Haul of Connecticut, the applicant and parent corporation for the property owner, Amoco Real Estate. The plaintiff has a sufficient interest in the denial of the coastal site plan and has established aggrievement under 8-8 of the General Statutes. It assigns three reasons for this appeal: (1) the coastal site plan application conforms to the zoning regulations and all of the reasons for denial of the application were improper; (2) failure to allow the commission chairman to vote on the application; and (3) the requirement for five affirmative votes and the right to a postponement for a hearing before a full nine member commission was not explained to the applicant.
There is no merit to the third reason for the appeal. The commission has no obligation to explain its regulations or bylaws to applicants before it as long as they are in writing and are available to the public. By proceeding with the hearing on the application, whether it had knowledge of the rules or not, the applicant was bound by the result, and cannot complain after the fact that if it had been apprised of the rules and procedures that it would have proceeded differently. A quorum was present, and the applicant did not object to proceeding without nine commissioners. Eight commission members were present even though only seven voted, and there were enough members present, even without the chairman's participation, for the five affirmative votes needed to pass the application.
However, there was a material defect in the voting procedures of the commission at the December 13, 1993 meeting. The Bridgeport Planning and Zoning Commission resulted from a merger of the Zoning Commission and the Planning Commission which took effect on January 1, 1993. The first meeting of the new commission was held on January 11, 1993, and bylaws were adopted on that date with amendments on February 8, 1993. Article 5, section 6 of the bylaws provides that a quorum for the commission to conduct its business is six members. Article 3, section 2 provided as follows: CT Page 9036
 "The chairman shall preside at all meetings and hearings and shall have the duties normally conferred by parliamentary usage on such offices. The chairman shall vote only in strict conformance with Roberts Rules of Order. The chairman shall have the authority to appoint committees and call special meetings."
The second sentence in that section was amended on March 28, 1994, after the commission's decision on the plaintiff's application, to read that "The chairman shall have the same voting right as any sitting commissioners." The defendant has filed two sets of bylaws with the court, the ones in effect on February 9, 1993 and the amended bylaws of March 28, 1994. The original bylaws had no provision for the number of votes required on an application to the commission. There was some discussion at the meeting of January 11, 1993 between the commission members and their counsel when the bylaws were being adopted as to the number needed for a quorum and how many votes were needed on an application. While this discussion is not controlling, the corporation counsel indicated that five votes were required to pass an application and that the bylaws had to follow applicable state statutes. The amended bylaws of March 28, 1994 contain Article 5, section 12 on votes needed for approval of applications. It states:
 "Five affirmative votes are necessary for an approval of any petition coming before the Planning and Zoning Commission representing a simple majority of the full commission except as specified under section 8-3(b) of the Connecticut General Statutes."
Although the commission took the position at the time the application was decided that five affirmative votes were required for approval of the coastal site plan, the record before the court does not disclose that Article 5, Section 12 was in effect at that time, and it cannot be relied upon as the basis for the commission's decision. In any event, the starting point for determining the number of votes required are applicable statutory provisions, and in the absence of a relevant statute, Connecticut case law on the subject. The same applies to limitations on voting imposed on members of land use agencies. CT Page 9037
The only application before the commission here was a coastal site plan, and review of it was governed by § 22a-109 of the General Statutes. That statute provides that the municipal zoning commission reviews coastal site plans to determine conformity of buildings and structures which are located fully or partially within the coastal boundary with "the specific provisions of the zoning regulations of the municipality and the provisions of §§ 22a-105 and 22a-106" of the General Statutes. Section 22a-109(a) C.G.S. A coastal site plan may be denied if it fails to comply "with the requirements already set forth in the zoning regulations of the municipality" and the criteria in §§ 22a-105 and 22a-106. Review of a coastal site plan under § 22a-109 supersedes any review by the zoning commission under § 8-3(g) of the General Statutes. Section 22a-109(a) C.G.S. The substantive factors of § 8-3(g) concerning conventional site plans do not apply when a coastal site plan application is made under § 22a-109. Read v. Planning Zoning Commission, 35 Conn. App. 317,323. The Coastal Management Act is expressly concerned with providing uniform standards for evaluating the impact of coastal development, while allowing municipalities to maintain local control over the process, Id., 324, but neither § 22a-109 or any other provision in the coastal management statutes contain any provision concerning the number of votes required to approve a coastal site plan.
While there are several zoning statutes that govern the number of votes needed on an application, none of them apply to coastal site plans. For example, § 8-7 of the General Statutes requires the concurring vote of four members of the zoning board of appeals to reverse a decision of the zoning enforcement officer or to approve a variance. Section 8-3(b) of the General Statutes provides that zoning regulations and zone boundaries can be established, changed or repealed only by a majority vote of all the members of the zoning commission (unless a protest petition is filed, in which event a two thirds vote of all commission members is mandated). That statute only governs changes in zoning regulations and zone boundaries, and not administrative actions of a municipal zoning commission. In the absence of a controlling statute, the rule in this state is that where a quorum of an agency is present, a majority of the votes actually cast is sufficient even though the number of votes is less than a quorum, provided there are a sufficient number of members present, whether voting or not, to constitute a quorum. Fleischman v. ConnecticutBoard of Examiners in Podiatry, 22 Conn. App. 181, 186,576 A.2d 1302 (1990); Somers v. City of Bridgeport, 60 Conn. 521, 526, 527, CT Page 9038 22 A. 1015 (1891); State ex. rel. Kenney v. Ranslow, 21 Conn. Sup. 294,298, 154 A.2d 526 (1959). Eight commission members were present and four voted for the application, and three voted against it. The chairman abstained when one of the other commission members claimed that the chairman could not vote, presumably because of the claim that the chairman could vote only in the event of a tie. The minutes do not disclose the commission chairman's position on the application. When a quorum is present and a vote is taken, nonvoting members of the agency are considered as having concurred with the result of the vote, Somersv. City of Bridgeport, supra, 60 Conn. at 527; State ex rel Kenneyv. Ranslow, 21 Conn. Sup. at 298, unless a statute imposes other requirements.
There are several reasons why the application passed. First of all, a quorum was present and a majority of the members voting were in favor of the application, as there were four affirmative and three negative votes. No applicable statute required five affirmative votes and Article 5, Section 12 of the bylaws was not in effect when the vote was taken. (It should also be noted that it is questionable whether Article 5, Section 12 applies to all matters before the commission and coastal site plans in particular.) Secondly, assuming five votes were needed for the application, the case law rule that abstainers are counted with the majority resulted in five votes on this application.
Finally, the chairman was improperly precluded from voting on the application. The powers of a zoning commission and a combined planning and zoning commission are exclusively controlled by statute and there is no authority to enact regulations or bylaws except as expressly provided by statute.Capalbo v. Planning Zoning Board of Appeals, 208 Conn. 480, 490,547 A.2d 528 (1988); Langer v. Planning Zoning Commission,163 Conn. 453, 457, 313 A.2d 44 (1972). There is no provision in the general statutes allowing a municipality or a planning and zoning commission to preclude one of the commission members from voting on an application. In order to prevent any commission member from having voting privileges, or to limit that right, there must be a statutory provision. (See §§ 8-11 and 8-21 of the General Statutes, disqualification of commission members, and § 8-19, Ex-officio members of the planning commission without voting privileges.) Article 3, Section 2 of the bylaws does not expressly prevent the commission chairman from voting on applications or allow the chairman to vote only in the event of a tie. To the extent that Roberts Rules of Order, referred to in CT Page 9039 that bylaw, provides otherwise, it cannot restrict a commission chairman from voting on any applications before the commission. In fact, shortly after the vote on this application, Article 3, Section 2 was amended to expressly provide that the chairman has the same voting rights as any other commissioners.
When acting upon a coastal site plan application, a zoning commission acts in an administrative capacity. DeBeradinisv. Zoning Commission, 228 Conn. 187, 198, ___ A.2d ___ (1994). On appeal, the question for the court is whether the record before the agency supports the decision reached, and the action of the commission must be sustained if even one of the stated reasons is sufficient to support it. Id., 198, 199. A reason will be upheld if it is supported by substantial evidence, and evidence is sufficient to sustain the agency's finding if it affords a substantial basis of fact from which the fact in issue can reasonably be inferred. Id., 199.
Viewed under this standard, none of the three reasons given by the commissioners who voted to deny the application are supported by substantial evidence. The first reason, based on anticipated poor driving skills of truck drivers, which might create a traffic hazard, is not supported by substantial evidence or germane to creating a parking lot on the subject property. The same applies to the second reason, speculation that trucks might not be properly maintained and might leak fluids, which in turn might flow to a creek located some distance from the property.
Under other circumstances, the third reason assigned would be a valid reason for denying the application, but that is not the case here. A coastal site plan application must conform to the municipal zoning regulations and the provisions and criteria of §§ 22a-105 and 22a-106 of the General Statutes. See § 22a-109(a) C.G.S. Id. The proposed uses are permitted in the zone, and there is no claim of noncompliance with the zoning regulations. When considering the criteria in §§ 22a-105 and22a-106 of the General Statutes, the commission decides if potential adverse impacts of the proposed activity on coastal resources and future water dependent development activities are acceptable. Section 22a-105(a) CGS. If it were not for the fact that a corner of the property proposed as a parking lot was within the coastal boundary, no coastal site plan review would have been required on this project. The property is already developed and is located about 1,000 feet from the coast. There is nothing in the record to suggest that any of the coastal resources, as CT Page 9040 defined in § 22a-93(7) of the General Statutes, are affected at all by the proposal. There is also no evidence of any "adverse impacts on coastal resources" as defined in § 22a-93(15) CGS. Moreover, there is also no substantial evidence that this property, located 1,000 feet from the coast, is suitable for "water dependent uses" as defined in § 22a-93(16) or that its continued business use results in any "adverse impacts on future water-dependent development opportunities or activities" as defined in § 22a-93(17) CGS. An application is not properly denied where there is no substantial evidence in the record that the property is either suitable for a water-dependent use for which there is a reasonable demand or it is identified for that type of use in the plan of development. DeBeradinis v. Zoning Commission, supra, 201. The fact that there is some shopping in the area for seaside related uses or there is a maritime atmosphere to other businesses in the area is not sufficient to deny the application. The building on the subject property is outside of the coastal zone. A parking lot is a parking lot whether or not businesses in the area have a nautical or water-related use decor. None of the reasons for denial of the application were valid.
Since the application was actually approved by the commission which improperly determined the effect of the vote and in addition, none of the reasons given for denial, of the application were valid, the coastal site plan was and had to be approved. This is a proper case to direct approval of the application. See DeMaria v. Enfield Planning Zoning Commission,159 Conn. 534, 540, 271 A.2d 105 (1970); R K Development Corp. v.City of Norwalk, 156 Conn. 369, 376, 242 A.2d 781 (1968); Potterv. Board of Selectmen, 166 Conn. 376, 380, 349 A.2d 844 (1974).
The appeal is sustained and the commission is directed to approve the site plan as submitted.
FULLER, JUDGE