LARRY MOON ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF MADISON
(SC 17921)

Rogers, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued December 5, 2008—officially released March 31, 2009

*Leslie S. Hollo*, for the appellants (plaintiffs).

*Michael A. Zizka*, with whom, on the brief, was *Lana M. Glovach*, for the appellee (defendant).

### Opinion

ROGERS, C. J. The plaintiffs, Larry Moon and Sherry Moon, appeal from the judgments of the trial court denying their two appeals from the decisions of the defendant, the zoning board of appeals (board) of the town of Madison (town). On appeal to this court, the plaintiffs claim that the trial court: (1) in the first case, improperly construed the town zoning regulations as requiring them to obtain a variance from the board before making certain improvements to their residence; and (2) in the second case, improperly determined that the board's decision to deny their request for a variance

was supported by the record.[1] We affirm the judgments of the trial court.

The relevant facts are set forth in the trial court's memorandum of decision and are not in dispute. Sherry Moon owns residential property located at 26 Woodlawn Avenue in Madison, where she resides with her husband, Larry Moon. The property is located in the RU-2 zoning district and contains a building that fails to conform to the front yard setback and maximum building coverage requirements for the district, as set forth in the town zoning regulations.[2] The nonconforming attributes of the building, however, existed at the time when the front yard setback and building coverage requirements were adopted by the town's planning and zoning commission. See General Statutes § 8-2 (a).[3]

On April 1, 2004, the plaintiffs applied to the board for a variance in order to add additional living space to the second story of the building. The proposed renovations would increase the height of the building within

---

[1] The plaintiffs also challenge the trial court's conclusion, in the second case, that the board properly found that the plaintiffs had failed to meet their burden of proving that their proposed renovations would not affect substantially the town's comprehensive zoning plan. Because our resolution of the plaintiffs' first two claims is dispositive of this appeal, we need not address the plaintiffs' final claim. See *Kozlowski* v. *Commissioner of Transportation*, 274 Conn. 497, 500 n.6, 876 A.2d 1148 (2005).

[2] Sections 3.6 (d) and (f) of the town zoning regulations provide for a maximum building coverage of 10 percent of the total area of the lot and a minimum front yard of 40 feet between the front lot line and the building. The plaintiffs' residence covers 17 percent of their lot and lies just under 19 feet from the front lot line.

[3] General Statutes § 8-2 (a) provides in relevant part: "The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes . . . . Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. . . ."

the front yard setback but would not alter or expand the building's existing nonconforming footprint. On May 12, 2004, following a public hearing on the plaintiffs' application, the board denied the requested variance on the grounds that the proposed expansion would not be in harmony with the surrounding neighborhood and that the plaintiffs had failed to establish an exceptional difficulty or unusual hardship.

On June 22, 2004, the plaintiffs, claiming that no variance was necessary in order to proceed with their project, submitted an application to the zoning enforcement officer for a permit to make the proposed improvements to their residence. The zoning enforcement officer denied the permit on the ground that a variance was required because the proposed improvements did not comply with the zoning regulations. Following a public hearing on October 5, 2004, the board denied the plaintiffs' appeal from the decision of the zoning enforcement officer.

The plaintiffs appealed from the board's decisions to the trial court. After a hearing, the trial court denied the plaintiffs' appeals. The court concluded that § 12.6 of the town zoning regulations[4] requires the plaintiffs to obtain a variance before making the proposed renovations to their residence. The court further concluded that the board properly had denied the variance because: (1) the proposed renovations failed to conform to the town's comprehensive plan; and (2) the plaintiffs had failed to sustain their burden of proving that the

---

[4] Section 12.6 of the town zoning regulations provides: "No building which does not conform to the requirements of [the town zoning] regulations regarding the building height limit, area and width of lot, percentage of lot coverage, and required yards and parking facilities shall be enlarged unless such enlarged portion conforms to the regulations applying to the district in which it is located."

town zoning regulations caused them exceptional difficulty or unusual hardship. This appeal followed.[5]

# I

The plaintiffs' first claim challenges the trial court's interpretation of § 12.6 of the town zoning regulations. The trial court concluded that § 12.6 prohibits property owners from vertically expanding a nonconforming building's existing footprint if the expanded portion lies above a section of the existing building that does not conform with front yard setback requirements. The plaintiffs, however, claim that § 12.6 permits them to expand vertically any portion of their existing building so long as the expanded portion of the building remains within the existing nonconforming footprint. In support of their interpretation, the plaintiffs cite to various Appellate Court and Superior Court decisions construing provisions of zoning regulations from other municipalities. We conclude, however, that the cases cited by the plaintiffs are inapposite because the plain language of § 12.6 clearly and unambiguously supports the trial court's interpretation.

We begin our analysis of the plaintiffs' claim by setting forth the standard of review. Because the plaintiffs' claim requires us to review the trial court's interpretation of the town zoning regulations, "our review is plenary. . . . Additionally, zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes." (Citation omitted; internal quotation marks omitted.) *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 652, 894 A.2d 285 (2006).

---

[5] The plaintiffs appealed from the trial court's judgments to the Appellate Court after the Appellate Court granted certification to appeal, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Rivers* v. *New Britain*, 288 Conn. 1, 10–11, 950 A.2d 1247 (2008). Furthermore, "General Statutes § 1-1 (a) provides: 'In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly.' 'If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary.' " *Heim* v. *Zoning Board of Appeals*, 289 Conn. 709, 717, 960 A.2d 1018 (2008).

Applying the foregoing principles to the present case, our first task is to examine the text of § 12.6 to determine whether the language clearly and unambiguously expresses the intent of the local legislative body. Section 12.6 of the town zoning regulations provides in relevant part: "No building which does not conform to the requirements of [the town zoning] regulations regarding . . . required yards . . . shall be enlarged unless such enlarged portion conforms to the regulations applying to the district in which it is located." The

board agrees that the proposed renovations would not alter the existing footprint of the building or increase the extent to which the entire building encroaches on the front yard, and the plaintiffs do not dispute that their proposed renovations seek to enlarge their nonconforming building. The only question for this court to decide is whether *"such enlarged portion* conforms to the [zoning] regulations . . . ." (Emphasis added.) Madison Zoning Regs., § 12.6.

The use of the term "portion" in § 12.6 is significant for two reasons. First, the word "portion" is commonly understood to mean "an often limited part set off or abstracted from a whole . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2003). Second, the use of that term in the latter part of § 12.6 is strong evidence that the local legislative body intended a different meaning from the term "building" in the first part of the regulation. See *Southern New England Telephone Co.* v. *Cashman,* 283 Conn. 644, 662, 931 A.2d 142 (2007) (*Katz, J.,* concurring) (we assume legislature has different intent when it uses different terms in same statutory scheme). We conclude, therefore, that the plain language of § 12.6 of the town zoning regulations clearly and unambiguously conveys a legislative intent to restrict the enlargement of nonconforming buildings, unless the proposed enlarged subsection of the building, standing alone and without respect to the characteristics of the existing building, conforms to the zoning regulations.[6]

---

[6] The plaintiffs contend that this interpretation of § 12.6 of the town zoning regulations is inconsistent with the board's historical position that no variance would be required if the existing building maintained the appropriate front yard setback, notwithstanding the fact that the proposed enlarged portion would be built atop a footprint that exceeds the 10 percent maximum building coverage requirement. They argue, in essence, that our interpretation would create a double standard that requires a variance for one nonconformity (minimum front yard setback) but not for the other (maximum building coverage). We reject the plaintiffs' argument for two reasons. First, there is no evidence in the record as to the board's historical application of § 12.6 to buildings that exceed maximum building coverage requirements.

In this case, the plaintiffs seek to expand their residence by adding a second story atop certain sections of the existing nonconforming footprint. The new sections of the nonconforming building, i.e., enlarged portions, would rest within forty feet of the front lot line. Because § 3.6 (f) of the town zoning regulations requires a front yard of at least forty feet[7] within the RU-2 zoning district, the proposed enlarged portion of the plaintiffs' residence would not conform to the zoning regulations. Accordingly, the trial court properly determined that the plaintiffs would require a variance from the board in order to proceed with their proposed renovation.

## II

The plaintiffs' second claim challenges the trial court's conclusion that the plaintiffs had failed to establish before the board that the strict enforcement of the zoning regulations would cause them exceptional difficulty or unusual hardship. Specifically, the plaintiffs argue that the board improperly failed to credit evidence in support of their assertions that their lot was so undersized that the strict enforcement of the zoning regulations "would leave only a small strip of land unsuitable on which to build any house." We are not persuaded.

"The standard of review on appeal from a zoning board's decision to grant or deny a variance is well established. We must determine whether the trial court

Moreover, the plaintiffs' argument presumes that our interpretation of § 12.6, as that regulation applies to minimum front yard setback requirements, also affirms the board's position with respect to the application of § 12.6 to building coverage requirements. The applicability of § 12.6 to building coverage requirements, however, is not the issue before this court, and, therefore, we expressly do not address that issue.

[7] Section 19.28 of the town zoning regulations defines a front yard as "[a]n open space between the building and the front lot line . . . ."

Section 19.22 of the town zoning regulations defines open space as "[a] space not occupied by a building, open to the sky on the same lot as the principal building."

correctly concluded that the board's act was not arbitrary, illegal or an abuse of discretion. . . . Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . We, in turn, review the action of the trial court. . . . The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs. . . .

"A variance constitutes permission to act in a manner that is otherwise prohibited under the zoning law of the town. . . .

"It is well established, however, that the granting of a variance must be reserved for unusual or exceptional circumstances. . . . An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone. . . . Accordingly, we have interpreted [General Statutes § 8-6 (a) (3)] to authorize a zoning board of appeals to grant a variance only when two basic requirements are satisfied: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. . . . Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance. . . . A mere economic hardship or a hardship that was self-created, however, is insufficient to justify a variance . . . and neither financial loss nor the

potential for financial gain is the proper basis for granting a variance. . . .

"In order to determine whether the board properly granted the subject variance, we must first consider whether the board gave reasons for its action. . . . Where a zoning board of appeals does not formally state the reasons for its decision . . . the trial court must search the record for a basis for the board's decision." (Citations omitted; internal quotation marks omitted.) *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 205–208, 658 A.2d 559 (1995); see also *Rural Water Co.* v. *Zoning Board of Appeals*, 287 Conn. 282, 294–96, 947 A.2d 944 (2008).

In this case, the individual members of the board discussed reasons for denying the plaintiffs a variance, but the board did not state a collective, official reason for its action.[8] See *Harris* v. *Zoning Commission*, 259 Conn. 402, 420–23, 788 A.2d 1239 (2002). Accordingly, our resolution of the plaintiffs' claim requires a detailed

---

[8] Among the reasons discussed by the individual board members at the public hearing is the fact that the plaintiffs should have known when they purchased the property in 2003, what restrictions the zoning regulations placed on their ability to enlarge the building. Although we conclude that the plaintiffs ultimately failed to sustain their burden of proving the existence of an unusual hardship, we also recognize the well settled rule, which counsel for the board acknowledged at oral argument before this court, that a hardship is not self-created simply because the owner purchased the property with knowledge of the existing zoning regulations. "Where a nonconformity exists, it is a vested right which adheres to the land itself. And the right is not forfeited by a purchaser who takes with knowledge of the regulations which are inconsistent with the existing use. . . . Where the applicant or his predecessor creates a nonconformity, the board lacks power to grant a variance. . . . But if the hardship is created by the enactment of a zoning ordinance and the owner of the parcel could have sought a variance, then the purchaser has the same right to seek a variance and, if his request is supported in law, to obtain the variance. . . . Otherwise the zoning ordinance could be unjust and confiscatory." (Citations omitted; internal quotation marks omitted.) *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 712–13, 535 A.2d 799 (1988), quoting *Johnny Cake, Inc.* v. *Zoning Board of Appeals*, 180 Conn. 296, 300–301, 429 A.2d 883 (1980).

examination of the record in search of a basis for the board's conclusion. See id., 423.

We begin with the plaintiffs' April 1, 2004 application for a variance. In that application, the plaintiffs included a statement of hardship in which they asserted that their 11,198 square foot, or one quarter acre, lot was grossly undersized and that "[l]iteral enforcement of the [minimum yard] setbacks and [maximum building] coverage restrictions would render [the] lot completely unbuildable, making it impossible to add onto the existing building for any reason, including any necessary compliance with building codes." Thus, in order to obtain the requested variance, the plaintiffs had to submit evidence in support of their allegations that they cannot do any addition to their building, including any addition for necessary compliance with building codes. The plaintiffs utterly failed to submit any such evidence.

In their oral presentation to the board, the plaintiffs merely asserted that the building's windows do not comply with federal codes and present a safety hazard.[9] Yet, they submitted no evidence, lay or expert, that they need a variance to correct any code violation with regard to the existing windows.

Additionally, the evidence that the plaintiffs did submit belies their claim that the lot is completely unbuildable. In support of their application, the plaintiffs submitted photographs, surveys and other drawings depicting their lot, their existing residence and the

---

[9] The plaintiffs also asserted that they had suffered unusual hardship from the fact that the internal layout of the house was poorly designed to meet the needs of modern living. Such an inconvenience, however, does not rise to the level of hardship necessary for the approval of a variance. See *Jaser* v. *Zoning Board of Appeals*, 43 Conn. App. 545, 548, 684 A.2d 735 (1996) (where zoning regulations allowed plaintiffs to build house, although not type they desired, no hardship existed; disappointment in use of property does not constitute exceptional difficulty or unusual hardship), citing *Krejpcio* v. *Zoning Board of Appeals*, 152 Conn. 657, 662, 211 A.2d 687 (1965).

residence as it would look with the proposed renovations. Those drawings reveal that the lot measures approximately 127 feet wide at both the front and rear, approximately ninety-two feet deep on the south side and approximately eighty-four feet deep on the north side. The drawings further reveal that application of the front, rear and side yard setback requirements in § 3.6 (f) of the town zoning regulations[10] results in an available buildable area measuring approximately eighty-seven feet in the front and rear, approximately twenty-two feet on the south side and approximately fourteen feet on the north side. There is not a scintilla of evidence in the record, however, to support the plaintiffs' assertion that this strip of land is so small and narrow as to render it completely unbuildable.[11] *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 210 ("limitations imposed by the shape of the lot do not in themselves create a hardship" [internal quotation marks omitted]).

Finding no evidence in the record to support the plaintiffs' assertion that strict application of the zoning regulations regarding setbacks would create an exceptional difficulty or undue hardship, we conclude that the trial court properly affirmed the board's finding that the plaintiffs failed to sustain their burden of proof.

The judgments are affirmed.

In this opinion the other justices concurred.

[10] In addition to the forty foot minimum front yard requirement, § 3.6 (f) of the town zoning regulations also provides for a thirty foot minimum rear yard setback and a twenty foot minimum side yard setback.

[11] We reiterate that the applicability of § 12.6 of the town zoning regulations to building coverage requirements is not the issue before this court. See footnote 6 of this opinion. We therefore express no opinion regarding the plaintiffs' ability to expand the existing footprint of their building within the available buildable area described in this opinion.