GREEN FALLS ASSOCIATES, LLC *v.* ZONING BOARD
OF APPEALS OF THE TOWN OF
MONTVILLE ET AL.
(AC 33110)

DiPentima, C. J., and Alvord and Pellegrino, Js.

Argued April 9—officially released October 16, 2012

*Harry B. Heller*, for the appellant (plaintiff).

*Michael P. Carey*, for the appellee (named defendant).

### Opinion

DiPENTIMA, C. J. The plaintiff, Green Falls Associates, LLC, appeals from the judgment of the Superior Court dismissing its appeal from the decision of the named defendant, the zoning board of appeals of the town of Montville, denying the plaintiff's application

for a variance.[1] On appeal, the plaintiff claims that the court improperly determined that (1) the variance application failed to receive the necessary votes pursuant to General Statutes § 8-7, (2) there was no unusual hardship on the plaintiff and (3) the denial of the variance application was not a confiscation. In addition to rebutting these claims, the defendant challenges the plaintiff's standing to apply for a variance. We are not persuaded by the defendant's arguments regarding standing. We disagree with the plaintiff, however, with respect to its claims on the merits, and, therefore, we affirm the judgment of the Superior Court.

The following facts and procedural history, as set forth by the court in its memorandum of decision and as supported by the record, are relevant to the resolution of this appeal. The property in question is an unimproved plot of land in the town of Montville. At the time of the plaintiff's variance application, the property was validly nonconforming[2] with respect to the minimum lot area requirements contained in §§ 5.4[3] and 5.5[4] of the Montville zoning regulations. The property is located in the WRP-160 zoning district, which requires seventy-five foot front and rear yard setbacks, as well as side yard setbacks of thirty feet.

On December 1, 2006, the plaintiff entered into an agreement to purchase the subject property owned by

---

[1] Paul E. Chase filed a verified pleading for intervention in the proceedings before the zoning board of appeals and was joined as a defendant in the appeal to the trial court. He is not a party to the present appeal, and therefore we refer in this opinion to the zoning board of appeals as the defendant.

[2] A nonconforming lot is one which was "developed prior to the adoption of zoning regulations . . . and is nonconforming with respect to many of the zoning requirements in the district in which it is situated." *Hasychak* v. *Zoning Board of Appeals*, 296 Conn. 434, 438 n.6, 994 A.2d 1270 (2010).

[3] Section 5.4 of the Montville zoning regulations provides: "The minimum lot size in this district is 160,000 square feet."

[4] Section 5.5 of the Montville zoning regulations provides: "Each lot in this district shall have at least 200 feet of frontage on a street."

Arthur W. DeGezelle. The agreement contained a printed form setting forth a purchase price of $45,000 with a deposit of $500. In addition, the agreement included handwritten provisions indicating that the agreement was subject to the plaintiff's obtaining a building permit, at its expense, for a three bedroom house. In the same handwritten section, DeGezelle agreed to support the plaintiff's pursuit of any required permits, including, but not limited to, approval by the defendant. The agreement, by its terms, expired on April 1, 2007. The agreement did not contain language indicating that time was of the essence. On September 12, 2007, the plaintiff and DeGezelle appear to have amended the purchase price from $45,000 to $20,000 and changed the closing date to September 25, 2007, by way of a handwritten change on the December 1, 2006 agreement. Despite the fact that the plaintiff did not receive the permits as expected, it acquired title to the property from DeGezelle on September 28, 2007.[5]

On June 1, 2007, by application dated May 29, 2007, the plaintiff applied for a variance from the defendant. DeGezelle was listed as the owner of the property. In its application, the plaintiff requested a variance from "the strict application of Section 5.6.2 Side Yard Setback and Section 5.6.3 Rear Yard Setback." (Internal quotation marks omitted.) The plaintiff requested a variance for the purpose of building a thirty-eight by twenty-six foot, single family residence with an on-site well and septic system.

On July 11, 2007, the defendant held a public hearing on the application. At that time, John MacNeil, the chairman of the defendant, recused himself because he resided in close proximity to the property and at one time was interested in purchasing the property. The

---

[5] The deed conveying the property to the plaintiff indicated that the consideration paid for the property was $45,000.

hearing was continued to September 5, 2007, and, on that day, MacNeil again recused himself. At the hearing, Robert Mitchell, Jr., another member of the defendant, was absent. Four members of the defendant were available to vote on the plaintiff's application: Barbara MacFadyen, Douglas Adams, Richard Fawcett and Ellen Lakowsky. After the plaintiff's attorney presented a memorandum of law and the testimony of a soil scientist and took questions regarding the property, the attorney for an abutting landowner asked for a continuance to respond to the presentation. The plaintiff's attorney opposed the continuance, as did Fawcett, who noted his belief that the continuance was merely a "delaying tactic" by the abutting landowner's attorney. At the conclusion of the public hearing, the members of the defendant discussed the application. A motion was made and seconded to approve the application. When the members held a roll call vote, Adams, Fawcett and MacFadyen voted in favor of the variance application. Lakowsky abstained without giving a reason for her abstention. Notwithstanding the three votes in favor of the application, the defendant denied the application.

The plaintiff appealed the denial to the trial court on October 1, 2007. The court dismissed the appeal on October 28, 2010. On the granting of certification, the plaintiff appealed to this court. Additional facts will be set forth as necessary.

I

We first address the defendant's claim that the plaintiff lacked standing. This issue implicates subject matter jurisdiction, and therefore we address it before reaching the merits of the plaintiff's appeal. See *Gagnon* v. *Planning Commission*, 222 Conn. 294, 297, 608 A.2d 1181 (1992). The issue of standing is a question of law, and therefore subject to plenary review. *Water Pollution Control Authority* v. *OTP Realty, LLC*, 76 Conn. App.

711, 714, 822 A.2d 257, cert denied, 264 Conn. 920, 828 A.2d 619 (2003). After such review, we affirm the court's conclusion that the plaintiff had standing.

The defendant claims that the plaintiff lacked standing to apply for a variance. The defendant argues, specifically, that at the time of the plaintiff's June 1, 2007 application, it lacked a sufficient interest in the property. The defendant argues that the agreement was void as of April 1, 2007, and that the plaintiff therefore did not have an interest in the property after that date. We disagree.

In its motion for articulation, the defendant requested that the court articulate its response to the issue of standing, which the defendant argued was not addressed in the court's memorandum of decision. The court's response to the motion stated: "By way of articulation, it is found that the [plaintiff] did have such standing." Subsequently, the defendant filed a motion for review with this court requesting further articulation. This court granted the defendant's motion but denied the relief requested therein.

To have standing to apply for a variance, an applicant must be "in fact a real party in interest with respect to the subject property . . . whether he is in possession or has a present or . . . future right to possession . . . ." (Emphasis omitted; internal quotation marks omitted.) *Gladysz* v. *Planning & Zoning Commission*, 256 Conn. 249, 257, 773 A.2d 300 (2001). Further, absent any express provision that states the contrary, one who has contracted to purchase property has standing to apply for a variance governing its use. *Shulman* v. *Zoning Board of Appeals*, 154 Conn. 426, 431, 226 A.2d 380 (1967).

The defendant argues that the agreement was no longer in effect after April 1, 2007, the original closing date set in the agreement. Specifically, he argues that

because the agreement conditioned the happening of the closing on the plaintiff's obtaining a building permit and the plaintiff did not have such a permit on April 1, 2007, the agreement became null and void per its own terms. Contrary to the defendant's argument, the trial court found that on "April 1, 2007, the agreement, by its terms, expired although [the plaintiff] points out that the [agreement] did not provide, time was of the essence."

"Where the agreement does not specifically state that time is of the essence, it is presumed not to be unless the parties have expressed a contrary intent." (Internal quotation marks omitted.) *Tulisano* v. *Schonberger*, 74 Conn. App. 101, 106, 810 A.2d 806 (2002). As the court correctly found, there is no express statement of "time is of the essence" in the agreement, and, therefore, there is no basis to conclude that either the plaintiff or DeGezelle intended to nullify the agreement on April 1, 2007. Further, as the court correctly found, "[t]he evidence indicates that [the plaintiff] and [DeGezelle] intended that the [agreement] to purchase remain in effect." The agreement established the plaintiff's position as the purchaser of the property, and because we agree with the court's findings that time was not of the essence and that the parties intended the agreement to remain in effect, we further agree that the plaintiff had a sufficient interest in the property to apply for a variance.

II

The plaintiff claims that the court improperly determined that the variance application failed to receive the necessary votes pursuant to § 8-7.[6] Specifically, the

---

[6] General Statutes § 8-7 provides in relevant part: "The concurring vote of four members of the zoning board of appeals shall be necessary to . . . decide in favor of the applicant any matter upon which it is required to pass under any bylaw, ordinance, rule or regulation or to vary the application of the zoning bylaw, ordinance, rule or regulation. . . ."

plaintiff claims that Lakowsky's abstention created a situation where it was impossible to have a sufficient vote by the defendant. The plaintiff also contends that the court improperly determined that Lakowsky's abstention could not be counted as an affirmative vote. We disagree.

We begin with the language of the statute. Section 8-7 provides in relevant part: "The concurring vote of four members of the zoning board of appeals shall be necessary to . . . vary the application of the zoning bylaw, ordinance, rule or regulation. . . ." See *Fleet National Bank* v. *Zoning Board of Appeals*, 54 Conn. App. 135, 141, 734 A.2d 592, cert. denied, 250 Conn. 930, 738 A.2d 656 (1999); *S.I.S. Enterprises, Inc.* v. *Zoning Board of Appeals*, 33 Conn. App. 281, 286, 635 A.2d 835 (1993).

With that in mind, we now turn to our rules on statutory interpretation. Pursuant to General Statutes § 1-2z, "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes." "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Hasychak* v. *Zoning Board of Appeals*, 296 Conn. 434, 443, 994 A.2d 1270 (2010). Because this is a matter of statutory interpretation, our review is plenary. See *Abel* v. *Planning & Zoning Commission*, 297 Conn. 414, 427, 998 A.2d 1149 (2010).

A

The plaintiff first argues that Lakowsky's abstention left only three voting members on the board, which was insufficient for a valid vote under § 8-7. We disagree.

The plaintiff misconstrues the meaning of § 8-7 in claiming that a vote of three in favor, zero opposed

and one abstention constitutes only three votes and in concluding that therefore the composition of the defendant was insufficient. "[A] zoning board of appeals may not act unless there are at least four qualified members present and voting." *S.I.S. Enterprises, Inc.* v. *Zoning Board of Appeals*, supra, 33 Conn. App. 286. Further, "[w]herever a matter calls for the exercise of deliberation and judgment, it is right that all parties and interests to be affected by the result should have the benefit of the counsel and judgment of all the persons to whom has been intrusted the decision. . . . All the benefit, in short, which can flow from the mutual consultation, the experience and knowledge, the wisdom and judgment of each and all the members, is endangered by any other rule." (Internal quotation marks omitted.) Id., 287. The plaintiff was entitled to the full deliberation of its application by at least four of the members of the defendant, but not to a specific outcome or voting ratio by the defendant. Here, Lakowsky was present for the proceedings as to the plaintiff's application and she participated in the deliberation. She was present for both the July 11, 2007 meeting and the September 5, 2007 meeting and heard the plaintiff's evidence presented at each. Notwithstanding her ultimate abstention, Lakowsky was present and qualified, allowing the defendant to act on the application.

Further, the plaintiff conceded at oral argument before this court that it did not raise the issue of an insufficient panel at the time of Lakowsky's abstention. By proceeding with the hearing, the plaintiff accepted the defendant's procedures and cannot now complain that if it had been apprised of the defendant's rules and procedures, it would have proceeded differently. See generally *U-Haul of Connecticut* v. *Planning & Zoning Commission*, Superior Court, judicial district of Fairfield, Docket No. CV-94-0310549-S (September 8, 1994) (12 Conn. L. Rptr. 367). We also note that "[t]he alternate

members of the board often fail to attend meetings, and if one of the regular members is not there, the board can go forward with an application if four members are present, and the applicant consents. Whether consent is given generally depends upon the best guess of the applicant or the applicant's attorney as to whether a favorable vote of 4 to 0 is likely on the application." R. Fuller, 9 Connecticut Practice Series: Land Use Law & Practice (3d Ed. 2007) § 8:2, p. 217. The plaintiff noted at oral argument before this court that had it been aware of the possibility of a three to zero with one abstention vote, it would not have proceeded with its case, but such a claim is irrelevant. The plaintiff accepted the possibility of any combination of voting outcomes when it proceeded with its application before the defendant.

B

The plaintiff next claims that Lakowsky's abstention can and should be considered an affirmative vote in favor of the plaintiff's application. We disagree.

As we have determined that a vote of three to zero with one abstention does not create an impossibility under § 8-7, we need not require that Lakowsky's abstention be either affirmative or negative. When a statute specifically requires a number of affirmative votes, an abstention is not counted with the majority. 9 R. Fuller, supra, § 21:3, p. 599. Further, "[w]hen one abstains from casting a vote, that person does not intend that their vote be either for or against the particular proposition, but only that they do not wish to be recorded on either side of the issue." *Biasucci* v. *Zoning Board of Appeals*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-94-047330-S (December 9, 1994) (13 Conn. L. Rptr. 100).[7]

---

[7] Although the decisions of the Superior Court are not binding authority, we find the reasoning set forth in *Biasucci* particularly persuasive. See *Johnson* v. *Atlantic Health Services, P.C.*, 83 Conn. App. 268, 277, 849 A.2d 853 (2004).

The plaintiff relies heavily on *Somers* v. *Bridgeport*, 60 Conn. 521, 22 A. 1015 (1891), to support its claim that Lakowsky's abstention should be counted as an affirmative vote. *Somers* is factually distinguishable from this case. Most importantly, *Somers* does not pertain to § 8-7, or to any land use statute or regulation. Rather, our Supreme Court in *Somers* considered whether the passage of a vote to appoint police officers by the Bridgeport board of police commissioners was valid when two members of the board abstained, two voted in favor, and the mayor voted to break the tie. Id., 525. In its consideration, our Supreme Court interpreted a city ordinance to compel the board to fulfill its duty to take action. Id., 527. That is markedly different from the present case involving a decision to grant or to deny an application for a variance. This distinction makes *Somers* inapposite.

Further, where our Supreme Court has examined wetlands regulations, a subject area more analogous to the zoning regulation at force in this case, it found that in a three to three with one abstention zoning board vote, the abstention should not be made an affirmative vote. *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 533–34, 525 A.2d 940 (1987). "[T]he failure of an application to garner enough votes for its approval amounts to a rejection of the application." (Internal quotation marks omitted.) Id., 533. The court found that the board's vote, with the abstention, constituted a valid action and that the three votes for and three votes against resulted in an appropriate denial of a landowner's application for a permit to construct a single-family dwelling on property located adjacent to a lake. Id.

Accordingly, for all of these reasons, we conclude that Lakowsky's abstention did not constitute an affirmative response to the plaintiff's application.

## III

The plaintiff next claims that the court improperly determined that there was no undue hardship on the plaintiff and that the denial of the plaintiff's application for a variance did not amount to a confiscation. Specifically, the plaintiff argues that the court improperly determined that the placement requirements for an on-site septic system, coupled with a validly nonconforming, undersized, odd shaped lot did not constitute an unusual hardship or exceptional difficulty on the plaintiff, as required for a variance. Further, the plaintiff claims that the court improperly determined that the denial of the plaintiff's application did not greatly reduce or practically destroy the value of the property. We disagree with each of the plaintiff's claims.

### A

We turn to the plaintiff's claim that the placement requirements for an on-site septic system on the property constitutes an unusual hardship or exceptional difficulty. We set forth our standard of review. A zoning board of appeals "is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." (Internal quotation marks omitted.) *Schwartz* v. *Planning & Zoning Commission*, 208 Conn. 146, 152, 543 A.2d 1339 (1988). Further, "[w]hen a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision." (Internal quotation marks omitted.) *Fernandes* v. *Zoning Board of Appeals*, 24 Conn. App. 49, 53, 585 A.2d 703, rev'd on other grounds, 218 Conn. 909, 591 A.2d 811 (1991). As the defendant did not provide any reasoning for its decision, and because of the unusual procedural posture created by Lakowsky's abstention, we search the entire record to find a basis

for the defendant's denial of the plaintiff's application. See *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 544, 600 A.2d 757 (1991).

At its widest, the property is one hundred feet long at its frontage, and it narrows to thirty feet at the rear line. The property requires an on-site septic system. The Connecticut Public Health Code Technical Standards § IIA requires that a subsurface sewage disposal system be at least ten feet from any property line and fifteen feet from any building served. The plaintiff argues that in order to comply with the code it must place the septic system in the front of the property, which would leave insufficient space to build the three bedroom home it desires.

"A variance constitutes permission to act in a manner that is otherwise prohibited under the zoning law of the town . . . ." (Internal quotation marks omitted.) *Moon* v. *Zoning Board of Appeals*, 291 Conn. 16, 24, 966 A.2d 722 (2009). In order to prove the necessity of a variance, an applicant must show that (1) the variance will not substantially affect the comprehensive zoning plan and (2) adherence to the strict letter of the zoning ordinance will cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. Id. To support the granting of a variance, the hardship must arise from a condition different in kind from that generally affecting properties in the same zoning district and must be imposed by conditions outside the property owner's control. See *Whittaker* v. *Zoning Board of Appeals*, 179 Conn. 650, 657, 427 A.2d 1346 (1980); *Garibaldi* v. *Zoning Board of Appeals*, 163 Conn. 235, 238, 303 A.2d 743 (1972).

The plaintiff argues that *Stillman* v. *Zoning Board of Appeals*, 25 Conn. App. 631, 596 A.2d 1, cert. denied, 220 Conn. 923, 598 A.2d 365 (1991), is analogous to this

case. In *Stillman,* however, the denial of the requested variance prevented the applicant from building *any* type of addition onto her previously existing home, which was situated on a nonconforming lot. Id., 636–37. This is not the case here; the plaintiff is not prevented from building *any* structure, but rather only from building the desired three bedroom house. There are alternatives available to the plaintiff. The court noted that a smaller house "could be erected" on the property. Design flows,[8] which impact the size of a septic system, depend on the number of bedrooms in a house. See Connecticut Public Health Code, Technical Standards § IV A. A smaller house therefore would reduce the size of the septic system needed for the property's size.

As the court noted, the plaintiff can build a smaller house and likely comply with all regulations. "Disappointment in the use of property does not constitute exceptional difficulty or unusual hardship . . . . It is well established that the power to grant a variance should be sparingly exercised." (Internal quotation marks omitted.) *Garlasco* v. *Zoning Board of Appeals,* 101 Conn. App. 451, 462, 922 A.2d 227, cert. denied, 238 Conn. 908, 927 A.2d 917 (2007). The plaintiff has failed to show that the inability to build its desired house as a result of the denial of the variance application is anything beyond a disappointment.

B

Finally, the plaintiff claims that the defendant's denial of its variance application so greatly reduced the price of the property as to constitute a confiscation. We disagree.

The United States Supreme Court has found a taking where a "regulation denies all economically beneficial

---

[8] " 'Design flow' means the anticipated daily discharge from a building . . . ." Regs., Conn. State Agencies § 19-13-B100a (a) (5).

or productive use of land." *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003, 1015, 112 S. Ct. 2886, 120 L. Ed. 2d. 798 (1992). In Connecticut, "[a] practical confiscation occurs when a landowner is prevented from making any beneficial use of its land—as if the government had, in fact, confiscated it. A practical confiscation does not occur when the landowner cannot take advantage of a myriad of uses acceptable under the applicable regulations because of choices the landowner itself has made that limit its land use options." *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 256, 662 A.2d 1179 (1995). Further, "[p]roof of financial hardship having a confiscatory or arbitrary effect requires more than testimony that property can be sold only for a price substantially lower than can be obtained if a variance is granted to permit a use otherwise prohibited by the zoning regulations." (Internal quotation marks omitted.) *Garlasco* v. *Zoning Board of Appeals*, supra, 101 Conn. App. 459.

The evidence does not show that the plaintiff cannot take advantage of any use of the property. The evidence shows that the plaintiff paid $45,000 to DeGezelle to purchase the property.[9] The tax assessor's card appraised the property at $6750, and the abutting landowner, Paul E. Chase, offered the plaintiff $1500 for the property. Although $1500 is significantly less than what the plaintiff paid for the property, the existence of such an offer demonstrates that the plaintiff did not lose all economically beneficial or productive use of the land, as is required under *Lucas* and *Bauer*. Further, as the court noted, a smaller house could be erected

[9] The plaintiff argues that the change in the purchase price, reflected in the handwritten edits to the plaintiff's original agreement with DeGezelle, from $45,000 to $20,000 evidences a change in the fair market value of the property. As a practical confiscation requires a *complete* loss of "any beneficial use," this argument does not affect our resolution of the question of confiscation. *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 256.

on the property and satisfy the requirements of the public health code for a septic system. While the plaintiff is not able to build on the property as it had intended, the property retains productive use, and therefore the defendant's denial of the plaintiff's variance application does not constitute a confiscation.

The judgment is affirmed.

In this opinion the other judges concurred.