******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

347 HUMPHREY STREET, LLC, ET AL. *v.* BOARD
OF ZONING APPEALS OF THE CITY
OF NEW HAVEN ET AL.
(AC 36186)

Lavine, Mullins and Bishop, Js.

*Argued February 20—officially released October 6, 2015*

(Appeal from Superior Court, judicial district of New Haven, Hon. William L. Hadden, Jr., judge trial referee.)

*Roderick R. Williams*, assistant corporation counsel, for the appellant (named defendant).

*Marjorie Shansky*, for the appellant (defendant P.T.R., LLC).

*Kenneth A. Votre*, with whom was *Richard E. Fennelly III*, for the appellees (plaintiffs).

*Opinion*

BISHOP, J. In 2011, the named defendant, the Board of Zoning Appeals of the City of New Haven (board), granted an appeal for four variances and an application for a special exception, with conditions, as requested by the defendant applicant, P.T.R., LLC.[1] The plaintiffs, 347 Humphrey Street, LLC, Rosemarie Morgan, and Thomas Morgillo,[2] thereafter appealed from that decision to the Superior Court. The trial court sustained the appeal,[3] concluding, inter alia, that the administrative record did not substantiate the board's finding of an unreasonable hardship, and, therefore, the board had no legal basis for having granted the requested variances. On appeal, the defendants claim that the court improperly substituted its judgment for that of the board when it determined that P.T.R., LLC, did not demonstrate the existence of a legally cognizable hardship and that the special exception was supported by the record. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. P.T.R., LLC, is the owner of real property located at 601-603 Orange Street in New Haven (property). The property has been used for the operation of a grocery market since at least 1963. P.T.R., LLC, currently operates a grocery and deli known as Nica's Market on the property, which is situated on the east side of Orange Street in the middle of the block between Humphrey and Bishop Streets. Orange Street, from several blocks south of Nica's Market to several blocks north of the market, is located in a RM-2, high middle density, residential zone.

On February 11, 2011, Joseph Sabino, a member of P.T.R., LLC, filed an appeal for zoning variances with the board seeking: (1) to permit lot coverage of 40 percent, where 40 percent already existed and 30 percent is permitted; (2) to permit a first floor grocery net floor area of 4366 square feet, where 2446 square feet already existed and 1500 square feet is permitted; (3) to permit the construction of a conforming building addition to the nonconforming building; and (4) to permit twenty-four outdoor seats where fifteen are permitted. Also, on February 11, 2011, Rosanna Sabino, another member of P.T.R., LLC, filed an application for a special exception for use of the property as a "Neighborhood Convenience Use (grocery) with existing take-out component and seasonal outdoor seating at six tables (24 seats)–continuation of long-standing use with conforming alterations to existing nonconforming structure; served by existing parking lot with 18 spaces."

The board held a public hearing on both pending matters on March 15, 2011. At the outset, Marjorie Shansky, counsel for P.T.R., LLC, provided an overview of its request, stating that "by putting a conforming addi-

tion onto [the building] we are seeking to deal with some very problematic code issues in the rear service area of the building and to provide a better operational experience both for the owners and for the neighborhood."

Accompanying this presentation was a site plan prepared by architect Gerald Kagan (plan) that detailed the proposed expansion and changes to the existing structure,[4] and the proposal for shifting the parking lot and increasing the lot size.[5] Kagan provided a review of the plan, which contained both "existing" and "proposed" depictions of the property. He commented on the requested changes for both the building and the lot surrounding the building. He explained that the proposal (1) added twenty feet to the driveway and moved it over about twenty feet so that it would be in the middle of the parking lot; (2) created a new loading zone with a trash compactor in the rear; (3) provided two handicapped parking spaces and a new bicycle parking location; (4) increased the first floor area to provide accessibility for people waiting in line to get to the deli; (5) increased the size of the kitchen by approximately twenty square feet; and (6) provided more space on the second floor for, inter alia, a break room for employees, two desks, a bathroom, and two offices.

With regard to the driveway, Kagan explained that, by adding twenty feet and moving the driveway over about twenty feet, trailer trucks would now be able to come into the parking lot more easily and would be able to back into the loading zone. Kagan further clarified: "There is a truck loading zone for box trucks. They get off the street and [its] a straight shot into the parking lot. And there is a [sufficient] turning radius for those trucks in the rear of the property to provide [for] loading and unloading. We have also provided on the side right here a space for the merchandise to go down into the cellar. What we are proposing to do is to build a whole new structure across the back of the building so that we're going to remove some of the physical impediments which are on the inside of the structure." Kagan stated: "[T]he truck loading is a really, really critical part of this application and by being able to have accessibility in the rear for these trucks to unload takes a burden off the street."

With regard to the first floor of the building, Kagan explained that the proposed alterations would provide an access line for people waiting in line to get to the deli and that the purpose of the plan was to "make the front of the store, the existing store, totally accessible." Next, he described the proposed changes to the kitchen. Specifically, Kagan told the board that the plan called for a complete removal of the existing kitchen on the property and that the new kitchen would be more accessible and have "the ability for people to work in an

efficient manner." Finally, Kagan described the layout for the second floor and explained that the plan would provide "a break room for the employees, space for two desks, a bathroom and [two] office[s] . . . ."

Shansky then spoke again on behalf of P.T.R., LLC. Shansky stressed that the granting of the variances would bring the property more into compliance with the zoning regulations and would therefore achieve one of the goals of zoning administration, namely, reducing and eliminating nonconformities. She further explained to the board: "These operational alterations that will be beneficial to the neighborhood indeed by their ability, and certainly the accessibility is a factor, but by being able to have access to the market and to its deli function unencumbered. It's going to provide a better flow for trucks to ease or ameliorate that traffic concern. And certainly, from a code perspective, from a building code perspective, it will eliminate this very hazardous four level operational place in the back and provide an accessible place potentially for employees as well."

Later during the presentation, board chairperson Cathy Weber asked whether the plan would provide increased employment opportunities for the deli. In response, Kagan stated: "The goal of [P.T.R., LLC] is not to make the business any bigger. It's to make it safer. It's to allow accessibility to handicapped individuals to get through the store. It's the ability to service the back where they don't go up and down stairs and employees [will not] be in danger. It's to make their lives easier, not more difficult."

After Shansky and Kagan concluded their presentation, Weber asked if anyone from the public wished to be heard. Charles Famularo and Barry Nellis, who frequent Nica's Market regularly, spoke in favor of the application. Furthermore, Harold Roth, Bill Donahue, Lloyd Parchman, and Donald Harvey, who live in the neighborhood where the property is located, spoke in favor of the application. Harvey specifically explained to the board that the plan "addresses the needs of the neighborhood with regard to traffic concerns and garbage [as] well as Nica's need to streamline operations while maintaining the neighborhood, the character of the neighborhood."

Attorney Gregory Gallo then spoke on behalf of 347 Humphrey Street, LLC, an abutting property owner. Gallo argued: "A variance under the code would require either a difficulty or an unreasonable hardship and a strict enforcement of the code. Here we don't have that. . . . [T]he applicant doesn't claim that there is a hardship. Looking at section 7 of the appeal to the zoning board there is no mention of a hardship."[6] He later explained that, "Ultimately, according to the zoning [regulations], the application doesn't meet the requirements of the [regulations] and it is an impermissible

enlargement of a nonconforming structure in which the applicant is seeking, without any hardship, to justify it, or any reason in which to circumvent these rules." In rebuttal, Shansky stated: "With respect to section 7 [of the appeal to the board] the question is describe the unreasonable difficulty or hardship. I don't think there is any grammatical or syntactical requirement that I recite the word hardship in that paragraph. So I will continue to stand on what I had written in the application as being responsive to that question." She further explained: "It will be larger. But that does not, under a zoning law, make it an expansion or an impermissible expansion of the use. [That] is simply the distinction I would make. And the real difference is that we're adding a safe one level kitchen so that we are removing the obstacles, both for employment and accessibility, and simply the safety issues, and bringing it up to code." Weber thereafter closed the public hearing.

Following the hearing, in accordance with Section 63 (d) (6) of the New Haven Zoning Ordinance,[7] the board referred the application for a special exception and all exhibits to the New Haven City Plan Commission (commission). The commission then submitted an advisory report to the board recommending approval of the application for a special exception, with conditions.

On April 12, 2011, the board conducted a "voting session." During this voting session, the board evaluated the merits of P.T.R., LLC's application for variances and a special exception, and discussed the commission's advisory report. Thereafter, the board voted to approve the application for variances as requested, and the application for the special exception with several conditions.[8] Notice of the board's decision was published in the New Haven Register on April 21, 2011.

On May 18, 2011, the plaintiffs filed an appeal of the board's decision in the Superior Court. On April 8, 2013, the trial court issued a memorandum of decision in which it reversed the board's approval of the variances and the special exception. With regard to the variances, the court concluded that the board had acted illegally in approving the variances because there was no evidence in the record to establish proof of difficulty or unreasonable hardship. With regard to the special exception, the court concluded that (1) the board was not entitled to accept, as its own finding, the commission's conclusion that the application for the special exception was in accord with the public convenience; and (2) the commission did not make the necessary findings pursuant to § 31 (d) of the New Haven Zoning Ordinance, and the board did not make the necessary finding pursuant to § 63 (d) (3) of the New Haven Zoning Ordinance. Accordingly, the court sustained the plaintiffs' appeal. The defendants filed the present appeal after this court granted their joint petition for certification.

The defendants claim that the court improperly substituted its judgment for that of the board when it reversed the board's decision approving the variances and the special exception. Because the board failed to issue any formal, collective statement of the reasons for its approval, the defendants argue that the court was required to consider the record as a whole and that substantial evidence in the record supported the board's decision to grant the variances and special exception.[9] In response, the plaintiffs claim that the court correctly concluded that the record did not contain any evidence showing an exceptional difficulty or unusual hardship that would support the granting of the variances. Furthermore, the plaintiffs claim that the court correctly concluded that the board failed to make the necessary finding that the special exception request was in accord with the public convenience and welfare. We agree with the plaintiffs that the defendants failed to demonstrate the requisite hardship, and, therefore, we need not reach the issue of whether the trial court correctly concluded that the special exception application should have been denied.[10]

At the outset, we review the well established standard of review applicable to zoning appeals. "[C]ourts are not to substitute their judgment for that of the board, and . . . the decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly made after a full hearing . . . . The trial court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support [the board's] findings. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . Where the board states its reasons on the record we look no further. . . . Where, however, the board has not articulated the reasons for its actions, the court must search the entire record to find a basis for the board's decision. . . . More specifically, the trial court must determine whether the board has acted fairly or with proper motives or upon valid reasons. . . . We, in turn, must determine whether the court properly concluded that the board's decision to grant the variance was arbitrary, illegal or an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Schulhof* v. *Zoning Board of Appeals*, 144 Conn. App. 446, 451, 74 A.3d 442 (2013).

Section 63 (c) (1) of the New Haven Zoning Ordinance provides in relevant part: "Where there is difficulty or unreasonable hardship in the way of carrying out the strict letter of the zoning ordinance, the Board of Zoning Appeals shall have power in a specific case to vary the application of any provision of the ordinance, if such variance will be in harmony with the general purpose and intent of the ordinance and if the public health,

safety and general welfare will be served and substantial justice done."

"To support a variance . . . a hardship must arise from a condition different in kind from that generally affecting properties in the same zoning district and must be imposed by conditions outside the property owner's control. . . . The applicant bears the burden of demonstrating the existence of a hardship. . . . Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance. . . . A mere economic hardship or a hardship that was self-created, however, is insufficient to justify a variance . . . and neither financial loss nor the potential for financial gain is the proper basis for granting a variance." (Citation omitted; internal quotations omitted.) *Schulhof* v. *Zoning Board of Appeals*, supra, 144 Conn. App. 453. Moreover, an applicant's desire to modernize an existing nonconformity does not "constitute a cognizable legal hardship that would warrant a variance." *Horace* v. *Zoning Board of Appeals*, 85 Conn. App. 162, 171, 855 A.2d 1044 (2004). This court held in *Horace* that improving the *appearance* of a building, "even if beneficial, [does not] constitute a cognizable legal hardship . . . ." Id. Furthermore, in rejecting a claim of "unusual hardship from the fact that the internal layout of the [existing nonconforming structure] was poorly designed to meet the needs of modern living," our Supreme Court observed that "inconvenience . . . does not rise to the level of hardship necessary for the approval of a variance." *Moon* v. *Zoning Board of Appeals*, 291 Conn. 16, 26 n.9, 966 A.2d 722 (2009).

From our careful review of the record, we agree with the court that there is nothing in the record to support a finding of a hardship. At the public hearing before the board, Kagan stated that the purpose of the variances was to make the store accessible to customers and help employees in the kitchen work more efficiently. Furthermore, Shansky told the board that the variances would give Nica's Market an opportunity to deal with problematic code issues, provide a better operational experience for the owners and for the neighborhood, and eliminate nonconformities on the property. On several occasions, she stressed the importance of eliminating the hazardous condition that is currently present in the existing kitchen. At oral argument before this court, Shansky further argued that the hardship for Nica's Market was being "penned in" by the preexisting nonconformities and in having an unsafe kitchen. Although the variances might allow P.T.R., LLC, to operate Nica's Market with more accessibility and more efficiency, it is well established that financial considerations, unless they greatly decrease or destroy the value of the property, do not constitute a cognizable legal hardship that would warrant a variance. See *Norwood* v. *Zoning Board of Appeals*, 62 Conn. App. 528, 534–35,

772 A.2d 624 (2001); see also *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 369, 537 A.2d 1030 (1988).

The court properly determined that the board illegally granted the variances filed on behalf of P.T.R., LLC, because the record did not support the existence of a legally cognizable hardship. Accordingly, we conclude that the court properly sustained the plaintiffs' administrative appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] For purposes of clarity, we refer to the board and P.T.R., LLC, collectively as the defendants, and individually by name.

[2] Each plaintiff is the owner of property located within 100 feet of the property that is the subject of this appeal. The trial court found that each of the three named plaintiffs was statutorily aggrieved by the board's decisions; see General Statutes § 8-8 (a) (1); and that finding has not been challenged on appeal. For purposes of clarity, we refer to them collectively as the plaintiffs, and individually by name.

[3] "In hearing the [plaintiffs'] appeal from the decision of the zoning board of appeals, the Superior Court acts as an appellate body." *Megin* v. *Zoning Board of Appeals*, 106 Conn. App. 602, 603 n.1, 942 A.2d 511, cert. denied, 289 Conn. 901, 957 A.2d 871 (2008).

[4] The record indicates that the existing structure consists of a first floor, a second floor, and a basement. The first floor consists of grocery aisles, a deli counter, and a kitchen. The kitchen currently operates on four separate levels. The second floor contains employee offices and is accessible by a staircase. Finally, the basement is used as a storage area and is also accessible by a staircase. The proposed plan for the first floor includes a new kitchen on one level, a second front entrance to the building, and a separated corridor that runs along the northern edge of the new structure back to a deli counter. The proposed plan for the second floor increases the floor area from 396 square feet to 928 square feet and adds office space and a break room for employees. Moreover, the plan enables the construction of a conforming staircase to both the second floor and the basement.

[5] The defendants represent that the site itself is 40 feet by approximately 154 feet and currently has an eighteen space parking lot.

[6] Section 7 of the form entitled, "Appeal to the Board of Zoning Appeals for a Variance," requires the applicant to: "Describe in detail the DIFFICULTY and UNREASONABLE HARDSHIP asserted to be in the way of carrying out the strict letter of the zoning ordinance." (Emphasis in original.) Joseph Sabino, on behalf of P.T.R., LLC, responded in writing: "The subject property is a legally existing non-conforming structure with a use that is permitted under the Zoning Ordinance by Special Exception, but whose origins in the neighborhood predate 1963. As such, the existing profiles of the property and use are non-conforming in virtually every respect. The proposal before the [board] accomplishes several salutary goals under Connecticut and New Haven zoning law. By redefining the adjacent parcels' property lines, the subject property is being brought closer to conformity, indeed, eliminating non-conformity in certain respects (e.g., currently, the subject lot width is 40' 0" where 50' 0" [is] required; the proposal before the Board results in a lot width of 68' 0" while preserving the zoning conformity of the adjacent lot). The proposed alterations/additions to the existing structure are designed to conform with existing RM-2 standards, including side and rear [yard] setbacks as demonstrated on the submitted site plan. The outdoor seating is located where automobiles formerly parked. Please see the attached Zoning Chart for the Proposed Development attached hereto and by reference incorporated herein."

[7] Section 63 (d) (6) of the New Haven Zoning Ordinance requires the board to refer the entire file to the New Haven City Plan Commission. Section 63 (d) (6) provides in relevant part: "In the following types of special exception cases, which involve more than conventional questions of *use* and may have a significant impact on surrounding areas and a substantial relationship to the comprehensive plan of the city, the Board of Zoning Appeals shall, following its hearing, refer the case including all exhibits to the City Plan Commission, which shall submit an advisory report, on such factors as it may deem relevant, to the board within 30 days after receiving

all records and documents in the case. This report of the City Plan Commission shall be taken into account in the decision of the Board." (Emphasis in original.)

[8] In making these conditions, the board stated: "Permission is hereby granted with conditions: (1) A site plan application shall be submitted to the City Plan Commission in accord with Section 64 (f) for detailed site plan review and approval prior to issuance of a building permit. (2) The number of seats on the exterior front patio will be 24, and shall not interfere with the public sidewalk. (3) The existing street trees will be replaced with a different species to be approved by the City's landscape architect in the City Plan Department before issuance of a Certificate of Occupancy. (4) The bike rack will be removed to the location shown on the plans and shall be located on the applicant's property."

[9] The defendants also claim that the decision of the trial court reversing the board's decision is contrary to Connecticut appellate decisional authority because the trial court failed to recognize that the reduction and elimination of nonconformities as an independent basis for the grant of variance relief. The record reveals, however, that the court considered that claim and addressed it in its memorandum of decision: "[P.T.R., LLC] claim[s] by way of [its] brief that the record demonstrates that the proposed construction will result in the elimination of certain nonconforming uses and that this would constitute an independent basis for the granting of the variances. See *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553 [916 A.2d 5] (2007); *Hescock* v. *Zoning Board of Appeals*, 112 Conn. App. 239 [962 A.2d 177] (2009). The court does not agree with this claim. The court notes that the board made no findings or conclusions which support this reasoning. The record discloses that [P.T.R., LLC's] proposed construction will eliminate or reduce a few nonconformities but create substantially more nonconformities than it will eliminate or reduce." Thus, upon our review, the record fully supports the trial court's conclusion.

[10] Because the need for the special exception was dependent upon the granting of the variances, we need not reach the defendants' claim that the trial court improperly determined that the board's granting of the special exception violated certain provisions of the New Haven Zoning Ordinance.

---